UNITED STATES, Appellee

v

RICHARD D. WILLIAMS, Private,
U. S. Army, Appellant

18 USCMA 78, 39 CMR 78

No. 21,016

December 27, 1968

*Captain John Wall Hanft* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Lieutenant Colonel Martin S. Drucker.*

*Captain Salvatore A. Romano* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick, Major Edwin P. Wasinger, Captain Paul A. Bible,* and *Captain James P. Mercurio.*

## Opinion of the Court

QUINN, Chief Judge:

The accused, a member of the Western Bands of Shoshonee Indians, was enlisted in the Army through the Selective Service system in January 1967. After basic training and advanced individual training, he was assigned to Army Personnel Center, Oakland, California, to be processed for transfer to Vietnam. On the morning of July 1, 1967, he was informed he would depart that evening on Flight N253 from Travis Air Force Base. Contending that, under the provisions of an 1863 treaty between the United States and the Western Bands of Shoshonee Indians, he was not a citizen of the United States and, therefore, not subject to the draft, the accused indicated he would refuse to prepare for shipment. The commanding officer of the company discussed the matter with him and advised him to think further about it.

About noon, the accused was given a written order to report to a specified office in Building 590 at 1:00 p.m., to complete processing for his overseas transfer. The accused acknowledged the order, but continued to insist he would not obey it. Under escort of a noncommissioned officer, the accused was allowed to go to lunch. About 12:30 p.m., Sergeant Donald T. Edwards was directed by the company commander to remain with the accused until 1:00 p.m. He was further instructed that if the accused expressed an intention to comply with the order he was to be allowed full opportunity to report to Building 590, but if, by 1:00 p.m., the accused had

evidenced no such intention, or had not made any effort to comply with the order, he was to be confined in the stockade. By 1:00 p.m., the accused had done and said nothing to indicate a desire to comply with the order. When that hour passed, he was taken to the stockade. He was in confinement when Flight N253 departed from Travis Air Force Base that evening.

In due course, the accused was charged with missing Flight N253 through design and with willful disobedience of the order to report for processing, in violation of Articles 87 and 90, Uniform Code of Military Justice, 10 USC §§ 887 and 890, respectively. The charges were referred to a general court-martial for trial. At trial, the accused contended the court-martial lacked jurisdiction over him because, as a Shoshonee Indian, he was not subject to the draft. The issue was decided against him.[1] See 8 USC § 1401; Albany v United States, 152 F 2d 266 (CA 6th Cir) (1945); Ex parte Green, 123 F 2d 862 (CA 2d Cir) (1941), certiorari denied, Green v McLaren, 316 US 668, 86 L Ed 1744, 62 S Ct 1035 (1942). He was convicted as charged, and the court-martial imposed a sentence extending to a dishonorable discharge and confinement at hard labor for five years. On intermediate review, the findings of guilty were affirmed, but the sentence was modified to reduce the period of confinement to two years.

On this appeal, the accused has abandoned his claim of lack of jurisdiction. He has, however, challenged

---

[1] Three days earlier a Federal District Court for the Northern District of California had denied an application for a Writ of Habeas Corpus based upon substantially the same grounds urged at the court-martial. United States v Commanding General, United States Army Personnel Center, Civil No. 47278, August 15, 1967 (unreported).

the validity of the findings of guilty. As to those pertaining to willful disobedience of the order to report, he contends that the order patently "contemplated future action" which he was prevented from taking by the Government's own officials.

The order was given to the accused about 11:30 a.m. The Government concedes the order contemplated future action by the accused, namely, to report to Building 590 at 1:00 p.m., so that his declaration at the time of receipt of the order of his intention not to comply was not then and there disobedience of the order. See Manual for Courts-Martial, United States, 1951, paragraph 169b. However, it argues that, according to the evidence, the accused was fully able to, but did not, comply with the order at the prescribed time; consequently, he had actually violated the order before he was confined in the stockade. As the accused views the evidence, he was placed in custody immediately after his declaration that he would not comply with the order; from that point on, he did not, as far as it appears in the record, know "he was free to leave . . . to obey the order." He concludes that the evidence establishes he was physically unable to comply with the order and, therefore, is not legally liable for willful disobedience. See United States v Amie, 7 USCMA 514, 22 CMR 304.

Lieutenant Benjamin H. Hill, the accused's company commander, testified ██ that after the accused 1 declared his intention not to comply with the order, he explained to him "what would happen." It may fairly be inferred that his explanation detailed the steps that would be taken if the accused persisted in his intention. Since after lunch, the accused reiterated his purpose not to comply, it may further be inferred that the measures then taken by the commander were those he had mentioned to the accused. Hill testified that when he placed the accused in Sergeant Edwards' hands, he instructed Edwards that if the accused indicated a desire to comply with the order at any time before 1:00 p.m., he was to be accorded "the opportunity to do so." Edwards testified he received his instructions from Lieutenant Hill in the accused's presence. The court-martial could reasonably conclude from all this testimony that the accused had been advised by Lieutenant Hill, and heard Lieutenant Hill tell Edwards while he was in Edwards' custody, that he was free to go to Building 590 in response to the order any time he wanted to do so before the designated hour. Since there was no impediment to compliance, and the evidence demonstrates there was no compliance in fact, the findings of guilty of willful disobedience of the order are unimpeachable.

Turning to the missing movement offense, the accused contends the findings of guilty are invalid because his incarceration in the post stockade by the Government in the afternoon made it impossible for him to be present at Travis Air Force Base for Flight N253, which departed in the evening. We need not consider the extent to which an accused is subject to trial and punishment for a violation of law based upon the willful failure to perform a designated duty, when performance was physically impossible because the accused was arrested and confined by military authorities for commission of another illegal act, which was intended to lead, or which reasonably led, to his incarceration. See Manual for Courts-Martial, supra, paragraph 165; United States v Myhre, 9 USCMA 32, 25 CMR 294; United States v Daggett, 34 CMR 706. At trial, the law officer determined that the two offenses on which the court-martial had returned findings of guilty were actually "one and the same" and, therefore, "merge[d]" for the purpose of punishment. The law officer did not vacate the findings as to the offense carrying the lesser penalty but he limited the maximum punishment which the court-martial could impose to that prescribed for willful disobedience of an order. Determination of a sentence within the kind of limitations imposed by the law of-

80

ficer will eliminate any prejudice to the accused that might have otherwise resulted from a deficiency in the allegation or proof of the charge carrying the lesser penalty. United States v Dandaneau, 5 USCMA 462, 18 CMR 86; United States v Posnick, 8 USCMA 201, 205, 24 CMR 11; United States v French, 10 USCMA 171, 185, 27 CMR 245. Nevertheless, procedurally, a multiplicious offense is allowed to be separately charged only to enable the Government to meet the exigencies of proof. Manual for Courts-Martial, supra, paragraphs 26*b*, 74*b*, 76*a*(8); United States v Middleton, 12 USCMA 54, 58, 30 CMR 54. When the necessity is not present, a multiplicious offense may be dismissed on motion before plea, or the findings of guilty may be disapproved before sentence, so as to guarantee that the offense is not reflected in the final punishment imposed upon the accused. United States v Middleton, supra; United States v Drexler, 9 USCMA 405, 26 CMR 185. In view of the law officer's ruling as to the multiplicious nature of the missing movement charge (see United States v Strand, 6 USCMA 297, 20 CMR 13), the findings of guilty as to that offense can appropriately be set aside, and the charge ordered dismissed. United States v Payne, 12 USCMA 455, 31 CMR 41.

The decision of the board of review as to Charge I and its specification is reversed, and the charge is ordered dismissed. The record of trial is returned to the Judge Advocate General of the Army for further proceedings consistent with this opinion.

Judge FERGUSON concurs.