UNITED STATES, Appellee

v

JOHN WILLIAM LOVEJOY, Lieutenant,
U. S. Navy, Appellant

20 USCMA 18, 42 CMR 210

No. 22,682

August 14, 1970

*Fred W. Shields, Esquire,* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Scott M. Feldman,* JAGC, USNR.

*Lieutenant James E. Akers,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, and *Lieutenant Thomas J. Donegan, Jr.,* JAGC, USNR.

## Opinion of the Court

QUINN, Chief Judge:

Appellant was convicted by a general court-martial at the Sixth Naval District, Charleston, South Carolina, of engaging in acts of sodomy with a sailor in his apartment in the civilian community during the period from September 11, 1967, to October 13, 1967 (specification 4, Charge II), and of a specification alleging that he did during the period from August 16, 1967, to October 13, 1967, "fraternize and associate" with the same sailor on "terms of military equality" by having the sailor as his "guest" in his apartment and sharing with him the cost of food (specification 1, Charge II). Both specifications were charged as a violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court-martial sentenced the accused to dismissal from the service.

In four separate assignments of error, appellate defense counsel attack the validity of the findings of guilty of the sodomy specification. The first contention is that, under O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), the court-martial did not have jurisdiction over the offense because it was committed in the civilian community and constitutes misconduct cognizable in the courts of the State of South Carolina.

The limitation on court-martial jurisdiction delineated in O'Callahan does not apply to an offense having military significance. In a number of cases we have held such significance is imparted to the offense when it affects the property or person of another member of the armed forces. See United States v Camacho, 19 USCMA 11, 41 CMR 11 (1969); United States v Everson, 19 USCMA 70, 41 CMR 70 (1969). Appellate defense counsel

would confine the authority of these cases to a situation in which the serviceman affected by the accused's act suffers loss or injury as a "victim." Proceeding from that premise, counsel argue that the sailor consented to the acts of sodomy in this case and, therefore, the acts had no "military victim" and no military significance. Some testimony is opposed to counsel's view of the evidence. During cross-examination by defense counsel, the sailor answered in the affirmative a question which in effect asked whether it was not a fair summary of his testimony that "half-way" during the period of the sailor's relationship with the accused he was "a victim." As a minimum, therefore, the accused was triable for the acts committed during this period. United States v Shockley, 18 USCMA 610, 40 CMR 322 (1969). Beyond that, we agree with the United States Navy Court of Military Review that the military association between the accused and the sailor, which included the fact that they were part of the same ship's company, imparted sufficient military significance to their conduct to justify the exercise of military jurisdiction over the offense. See Hooper v Laird, 19 USCMA 329, 41 CMR 329 (1970), concurring opinion by Judge Ferguson.

Two other assignments of error as to the sodomy charge deal with the specification. The accused contends that the specification is duplicitous because it alleges that he engaged in *acts* of sodomy over a period of time. Every act of sodomy may indeed be a separate offense. United States v Gandy, 5 USCMA 761, 19 CMR 57 (1955); United States v Henderson, 18 USCMA 601, 40 CMR 313 (1969).[1] To

---

[1] Each consensual act carries a penalty extending to a dishonorable discharge and confinement at hard labor for five years. Manual for Courts-Martial, United States, 1951, paragraph 127c, Table of Maximum Punishments, page 223; Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 127c, page 25–14. Consequently, when two

the extent the specification alleges clearly separate acts, it is subject to a motion to require the Government to allege each act separately. However, as the accused acknowledges, a continuous series of acts extending over a period of time and motivated by a single impulse may properly be alleged as a single offense. See United States v Midstate Horticultural Co., 306 US 161, 83 L Ed 563, 59 S Ct 412 (1939); United States v Carter, 16 USCMA 277, 36 CMR 433 (1966). Here, the acts were between the same parties, took place in the same apartment, and occurred as frequently as "three times a week" during the period alleged. In these circumstances, it was both reasonable and fair for the Government to forgo measurement of the separateness of each act to charge all as a single offense. United States v Hall, 6 USCMA 562, 565, 20 CMR 278 (1955). Several cases involving a similar specification of plural acts of sexual relations between the same parties over a period of time have been before us. United States v Shockley, supra; United States v Jones, 15 CMR 664 (AFBR 1954), petition denied, 4 USCMA 733, 15 CMR 431 (1954). See also United States v Smith, 18 USCMA 609, 40 CMR 321 (1969); United States v Carter, supra. The *Shockley* case also involved sodomy. The question of duplicity was considered in connection with the petition for review, but we found it unnecessary to decide the matter in the disposition of the case. Our silence, of course, did not constitute a determination of the propriety of the form of pleading, but it did suggest that the choice made by the Government was not such prejudicial error as to justify reversal of the conviction. In the circumstances disclosed by this record, it was, in our opinion, appropriate for the Government to charge the several acts of sodomy as a single offense. United States v Hall, and United States v Carter, both supra.

Finally, the accused contends that the sodomy specification was charged under the wrong Article of the Uniform Code. Article 125, Code, supra, 10 USC § 925, defines the offense of sodomy. Whether the offense consists of a single act or several acts alleged as a single offense, the act of misconduct is still sodomy, and should, therefore, be charged as a violation of Article 125. The record indicates that the specification was charged as a violation of Article 134, rather than Article 125, in reliance upon the decision of the board of review in United States v Jones, supra, which held that several acts of sodomy may constitute a "course of conduct" which can properly be regarded as conduct to the prejudice of good order and discipline. Misdesignation of the Article of the Code violated by the accused, however, is not prejudicial to any of his substantial rights. United States v Olson, 7 USCMA 460, 464, 22 CMR 250 (1957).

Turning to the fraternization charge, the accused challenges both the constitutionality of the offense and the legal sufficiency of the allegations of the specification. Cf. United States v Yocum, CMO 3–1944, at page 412, and United States v Free, 14 CMR 466 (NBR 1953). The evidence indicates that a fundamental aspect of the alleged fraternization was the sexual intimacy between the accused and the sailor. Some evidence, for example, admitted over defense objection, is to the effect that at various times the sailor told other members of his company about his homosexual activity with the accused. In its argument in support of the court-martial's findings of improper fraternization, the Government refers to the "scope of the appellant's living 'arrangement'" with the sailor and the "florid detail" of the arrangement in the evidence. "It is not," said the board of review in the *Free* case, at page 469, "the fact of eating together or sleeping in the

---

or more acts of sodomy between the same persons are set out in a single specification, the result is beneficial

to the accused. However, the accused may nonetheless assert his right to object to a duplicitous specification.

same place which" constitutes the offense of fraternization, "but the appropriateness of the time and place and the circumstances which dictate the proprieties." Considering the evidence as to the fraternization ▮ tion charge in light of the allegations and the evidence of the sodomy charge, including other alleged acts of which the accused was acquitted, the concurrence of the period of time, the place, and the "scope" of the relationship convinces us that the fraternization offense "merged" with the sodomy charge, and for that reason was not separately punishable. United States v McVey, 4 USCMA 167, 15 CMR 167 (1954); United States v Murphy, 18 USCMA 571, 40 CMR 283 (1969). We may, therefore, dismiss the charge without considering other aspects of the accused's attack on the validity of the findings of guilty. United States v Williams, 18 USCMA 78, 39 CMR 78 (1968).

The decision of the United States Navy Court of Military Review is reversed as to specification 1, Charge II, and the sentence, and the findings of guilty of that specification are set aside and the specification is ordered dismissed. The record of trial is returned to the Judge Advocate General of the Navy for submission to the Court of Military Review for reassessment of the sentence.

Judge FERGUSON concurs.

DARDEN, Judge (concurring in the result):

Today many enlisted members of the armed forces have educational qualifications, intellectual capacity, and social standards that surpass those of some officers. Nonetheless, fraternization may have a pernicious influence on military discipline. Despite my awareness of this, I must record my conviction that undue familiarity between an officer and a subordinate is susceptible of correction by administrative action.

Since the principal opinion treats the offense of fraternization as not being separately punishable, the result is the one I would reach because of my reservations about treating this practice as a crime.