**UNITED STATES, Appellee,**

v.

**O'Neal DOSS, Seaman Apprentice, U.S. Navy, Appellant.**

**No. 45,140.**

**NMCM No. 82–2738.**

U. S. Court of Military Appeals.

June 13, 1983.

For Appellant: *Commander Matthew J. Wheeler,* JAGC, USNR, *Lieutenant Commander Jeanne Carroll,* JAGC, USN (on petition).

For Appellee: *Commander W.J. Hughes,* JAGC, USN, *Lieutenant Commander Craig A. Biegel,* JAGC, USNR (on petition).

*Opinion of the Court*

EVERETT, Chief Judge:

Among the offenses for which appellant was tried by military judge sitting as a special court-martial were two brief unauthorized absences, two breaches of restriction, and willful disobedience of an order, in violation of Articles 86, 134, and 91, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 934, and 891, respectively.[1] The

---

1. Originally, the willful disobedience was charged under Article 92, Uniform Code of Mil-

absences were from appellant's unit, the USS KOELSCH, located at Mayport, Florida, and extended from 1345 to 1430 hours on August 31, 1981; and from 1440 to 1520 hours on the same date. The restriction was to the USS KOELSCH; and the breaches occurred at 1345 hours and 1440 hours on August 31. The willful disobedience allegedly took place at 1345 hours on August 31, and concerned an order of Chief Petty Officer Toadvine that appellant "not leave the ship while your [sic] in a restricted status."

Appellant entered guilty pleas to these charges. During the providence inquiry, he explained that his vessel had just returned from the South Atlantic, but before its arrival he had been restricted to the limits of his ship for 60 days as nonjudicial punishment. On August 31, since the vessel had just arrived in port, he wanted to phone his family. "I asked the ODD [sic] of the ship and he said I couldn't 'cause I was on restriction." When Doss asked that he be allowed to go ashore with an escort in order to make the call, this request was also refused. As to the order, appellant testified in this manner: [2]

> It was about 1345. He did say that I wasn't supposed to leave the ship because I was on restriction and I mentioned to him that I had to make a phone call. He said he wasn't allowed to let me leave the ship because I was on restriction. I asked him to let me have an escort. He said, no, I was not going to leave the ship and that's that. So, I walked off.

After going ashore, Doss was apprehended after 45 minutes by security personnel who brought him back to his ship. Thereupon, he walked off again, was again apprehended, and this time he was confined to the brig of the Jacksonville Naval Air Station.

Having determined the guilty pleas were provident, the military judge reserved his findings until he could hear evidence on a contested charge that, in violation of Article 95 of the Code, 10 U.S.C. § 895, appellant had resisted apprehension at 1405 hours on August 31. After the Government offered its evidence and counsel argued, the judge found appellant guilty of all charges.

During the presentencing proceedings, the military judge received documentary evidence—which reflected three nonjudicial punishments [3]—and heard Government and defense witnesses. Doss then made this unsworn statement: "Your Honor, I am guilty of all charges and my behavior was prejudice [sic] to good order of the UCMJ. With all due respect I'd like to ask you for a discharge of some type." Thereafter, the judge imposed a sentence of a bad-conduct discharge, 75 days' confinement at hard labor, and forfeiture of $350.00 pay per month for 3 months. The convening authority approved the findings and sentence; but the supervisory authority disapproved the findings of guilty as to willful disobedience on the ground that the plea of guilty was improvident. However, upon reassessment, the sentence was approved as appropriate. After the Court of Military Review affirmed the findings and sentence as approved below, we granted review to consider a specified issue concerning multiplicity. 15 M.J. 377 (1983).

## I

In *United States v. Baker,* 14 M.J. 361 (C.M.A.1983), we explained the principles that should be applied in dealing with multiple charges arising out of a single transaction. We are aware that some confusion existed in our precedents on this subject and therefore some further comment em-

---

itary Justice, 10 U.S.C. § 892; but at trial it was amended over defense objection to allege a violation of Article 91.

**2.** The Chief Petty Officer later testified that he "did not order him not to leave the ship. I just instructed him that he could not leave the ship without the CDO's permission."

**3.** Although appellant had been in the Navy for approximately four years, the three nonjudicial punishments had all occurred within three weeks before his ship had docked at Mayport. He had no prior court-martial convictions (the Court-Martial Order does not reflect this fact on page 2 under SENTENCE).

phasizing *Baker* may be appropriate. Moreover, the Supreme Court's decision in *Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), which postdates *Baker* and concerns similar issues, justifies some further discussion of multiplicity.

In *Missouri v. Hunter, supra,* the Supreme Court considered whether a defendant was properly convicted in a Missouri state court of both armed robbery and "armed criminal action" and sentenced for both offenses. In reversing the Missouri Court of Appeals, which had overturned Hunter's conviction and sentence for "armed criminal action," the Supreme Court emphasized that the double-jeopardy clause does not preclude cumulative punishment for offenses which are the same, if the legislature intended to authorize such punishments.

Of course, in upholding the state-court conviction the Supreme Court did not purport to limit the power of Congress or the President to prescribe different, more lenient procedures for trial by court-martial. In *Baker,* we made clear that in fact this has occurred. There we called attention to paragraph 26*b* of the Manual for Courts-Martial, United States, 1969 (Revised edition), which provides that "[o]ne transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person"; and which then gives these examples:

A person should not be charged with both disorderly conduct and assault if the disorderly conduct consisted in making the assault, or with both a failure to report for a routine scheduled duty, such as reveille, and with absence without leave if the failure to report occurred during the period for which he is charged with absence without leave. The larceny of several articles should not be alleged in several specifications, one for each article, when the larceny of all of them can properly be alleged in one specification. If a person willfully disobeys an order to do a certain thing, and persists in his disobedience when the same order is given by the same or other ·superior, a multiplication of charges of disobedience should be avoided.

Presumably, in prescribing these rules the President took into account these considerations to which Justice Marshall called attention in his dissent in *Missouri v. Hunter, supra* at 681–82:

The prosecution's ability to bring multiple charges increases the risk that the defendant will be convicted on one or more of those charges. The very fact that a defendant has been arrested, charged, and brought to trial on several charges may suggest to the jury that he must be guilty of at least one of those crimes. Moreover, where the prosecution's evidence is weak, its ability to bring multiple charges may substantially enhance the possibility that, even though innocent, the defendant may be found guilty on one or more charges as a result of a compromise ˙verdict. The submission of two charges rather than one gives the prosecution "the advantage of offering the jury a choice—a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence." *Cichos v. Indiana,* 385 U.S. 76, 81 [87 S.Ct. 271, 273, 17 L.Ed.2d 175] (1966) (Fortas, J., dissenting from the dismissal of certiorari).[4]

The Government's argument also overlooks the fact that, quite apart from any sentence that is imposed, each separate criminal conviction typically has collateral consequences, in both the jurisdiction in which the conviction is obtained and in other jurisdictions. *See Benton v. Maryland,* 395 U.S. 784, 790 [89 S.Ct. 2056, 2060, 23 L.Ed.2d 707] (1969); *Sibron v. New York,* 392 U.S. 40, 53–58 [88 S.Ct. 1889, 1897–1900, 20 L.Ed.2d 917] (1968). The number of convictions is often critical to the collateral consequences that an individual faces. For example, a defendant who has only one prior conviction will generally not be subject to sentencing under a habitual offender statute.

Furthermore, each criminal conviction itself represents a pronouncement by the State that the defendant has engaged in conduct warranting the moral condemnation of the community. *See* Hart, The Aims of the Criminal Law, 23 Law & Contemp.Probs. 401, 404–405 (1958). Because a criminal conviction constitutes a formal judgment of condemnation by the community, each additional conviction imposes an additional stigma and causes additional damage to the defendant's reputation. *See O'Clair v. United States,* 470 F.2d 1199, 1203 (CA1 1972), *cert. denied,* 412 U.S. 921 [93 S.Ct. 2741, 37 L.Ed.2d 148] (1973).

[4] It is true that compromise is possible even under the familiar procedure whereby a lesser-included offense is submitted along with a greater offense and the jury is told that it can convict on only one charge. Under the usual procedure, however, the risk of an irrational compromise is reduced by the rule that a lesser-included offense will not be submitted to the jury if the element that distinguishes the two offenses is not in dispute. *See, e.g., Sansone v. United States,* 380 U.S. 343 [85 S.Ct. 1004, 13 L.Ed.2d 882] (1965); *United States v. Tsanas,* 572 F.2d 340, 345–346 (CA2), *cert. denied,* 435 U.S. 995 [98 S.Ct. 1647, 56 L.Ed.2d 84] (1978).

The Manual also provides that "[t]he accused may be found guilty of two or more offenses arising out of the same act or transaction, without regard to whether the offenses are separate." Para. 74*b*(4). In *United States v. Drexler,* 9 U.S.C.M.A. 405, 26 C.M.R. 185 (1958), we ruled many years ago that, despite this provision, a trial or appellate court may grant relief from unreasonable multiplication of charges, even

**4.** In reversing the finding on a multiplicious offense where the sentence was not affected in light of the military judge's treating the offenses of concern as multiplicious for punishment, this Court in *United States v. Williams,* 18 U.S.C.M.A. 78, 81, 39 C.M.R. 78, 81 (1968), articulated this guiding principle:

> [P]rocedurally, a multiplicious offense is allowed to be separately charged only to enable the Government to meet the exigencies of proof. Manual for Courts-Martial, supra, paragraphs 26*b,* 74*b,* 76*a*(8); *United States v. Middleton,* 12 USCMA 54, 58, 30 C.M.R. 54. When the necessity is not present, a multiplicious offense may be dismissed on motion before plea, or the findings of guilty

after findings of guilty have been entered on those charges. *Accord, United States v. Baker, supra; United States v. Williams,* 18 U.S.C.M.A. 78, 39 C.M.R. 78 (1968).[4] Moreover, where we concluded that the unreasonable multiplication of charges might have affected the factfinder's decision on the merits as to all the multiplied charges—much like the threat posited by Justice Marshall—we have not hesitated to set aside *all* tainted findings of guilty. *United States v. Sturdivant,* 13 M.J. 323 (C.M.A. 1982).

■ In paragraph 26*b,* the Manual also recognizes that "[t]here are times, however, when sufficient doubt as to the facts or the law exists to warrant making one transaction the basis for charging two or more offenses." For example, a prosecutor may be unsure how prospective witnesses will testify at trial or what evidence will be admitted by the judge. Moreover, if an offense is not charged, evidence may be excluded as evidence of uncharged misconduct.[5]

In *Baker* we indicated that we will allow reasonable leeway to the Government in drafting charges in order to deal with such a situation. Thus, a military judge may act entirely appropriately in overruling a defense objection to multiplication of charges when this is raised at the outset of the trial, but then set aside findings of guilty on some of the charges at a later stage of the trial. For example, after appellant has pleaded guilty to several charges arising out of a single transaction so that some of the "doubt as to the facts or the law" may

> may be disapproved before sentence, so as to guarantee that the offense is not reflected in the final punishment imposed upon the accused.

**5.** Generally, evidence as to an uncharged offense will be admissible, if it is part of the same transaction as the crimes with which the accused is charged. *United States v. Thomas,* 11 M.J. 388, 392–93 (C.M.A.1981). Further, after findings, evidence of uncharged offenses may be offered by the Government in aggravation, even when the accused has pleaded not guilty. *United States v. Vickers,* 13 M.J. 403 (C.M.A. 1982).

thereby have been removed from the case, a judge may appropriately reexamine the situation to determine whether some of the charges should be dismissed as unreasonably multiplicious.[6]

In several situations we have ruled that, as a matter of law, an accused is entitled to dismissal of a certain charge because of multiplicity. One example is where conviction on multiple offenses involves inconsistent findings of fact. *See, e.g., United States v. Cartwright,* 13 M.J. 174 (C.M.A. 1982) (accused charged both with larceny as an aider and abettor and with receiving stolen property); *United States v. Marks,* 11 M.J. 303 (C.M.A.1981) (accused charged both with larceny of Government property and with dereliction of duty when the dereliction consisted of failure to stop the larceny which the accused himself had perpetrated). Another example is illustrated by *United States v. Gibson,* 11 M.J. 435 (C.M.A. 1981), where we concluded that since the accused had been convicted of two offenses—assault with intent to rape and attempted rape—which, under our precedents, actually were identical crimes, one of the findings of guilty had to be set aside. Still a third example of a situation in which we have granted relief to an accused who was convicted of two offenses arising out of one transaction is where one of the offenses was lesser included within the other. *See, e.g., United States v. Stegall,* 6 M.J. 176 (C.M.A.1979); *accord, United States v. Mallery,* 14 M.J. 212 (C.M.A.1982); *United States v. Neverson,* 11 M.J. 153 (C.M.A. 1981).

■ Even when an accused may be entitled to no relief as to the findings of guilty entered on several charges arising from the same transaction, he may deserve relief for purposes of sentencing. Thus, in *Baker,* we made clear that two offenses which might. satisfy the test of separateness enunciated by the Supreme Court for federal criminal trials, *see Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),

might nonetheless merge for sentencing purposes in a trial by court-martial. Indeed, in *Baker,* we granted the accused relief as to his sentence. While, in this respect, a military trial may be more lenient than its civilian counterpart, we concluded that this leniency was supported by our precedents extending back almost 30 years and also was recognized by the Manual for Courts-Martial. *See* para. 76*a* (5).

II

■ Applying these general principles to the case at bar, we initially note that the charges originally preferred against appellant border on a violation of paragraph 26*b* and can hardly be justified on the basis of possible uncertainties as to the facts or the law. For example, under the circumstances of this case, it is questionable that a charge of willful disobedience of the order not to leave the ship should have been added to the charges alleging breach of the restriction to the ship. *Compare United States v. Cook,* 31 C.M.R. 385 (N.B.R.1961), *with United States v. Greene,* 8 M.J. 796 (N.C.M. R.1980). *See United States v. Jessie,* 2 M.J. 573 (A.C.M.R.), *pet. denied,* 3 M.J. 254 (1977). *See generally United States v. Quarles,* 1 M.J. 231 (C.M.A.1975).

We note, too, that both the pleadings and the evidence indicate that each of appellant's brief unauthorized absences derived from his leaving his ship in violation of the restriction to that ship that had been imposed on him. Thus, to prove the two breaches of restriction, the Government relied at trial on proof of the unauthorized absences from the area of restriction, *i.e.,* the physical limits of appellant's unit; and in each instance this same evidence also was sufficient to establish the alleged violation of Article 86. Under virtually identical circumstances, we held in *United States v. Modesett,* 9 U.S.C.M.A. 152, 154, 25 C.M.R. 414, 416 (1958), that the unauthorized ab-

---

**6.** In that situation if the guilty plea were subsequently set aside it would seem arguable that the Government would be free to proceed again

on the charges that had been dismissed. *See United States v. Cook,* 12 M.J. 448 (C.M.A. 1982).

sences were lesser included offenses of the breaches of restriction.[7]

Prior to the decision in *Baker,* there was some confusion in this Court's precedents as to appropriate relief in the area of multiplicity. Frequently, even when two charges were duplicative as a matter of law, as in the circumstance where one is lesser included in the other, our remedy extended only to the sentence. *See, e.g., United States v. Modesett, supra; United States v. Posnick,* 8 U.S.C.M.A. 201, 24 C.M.R. 11 (1957). However, we concluded in *Baker* that in such circumstances the two offenses are multiplicious for findings—not just for sentence—and, accordingly, one of the findings cannot stand. *United States v. Baker, supra* at 367. We assume that had trial counsel here anticipated what *Baker* later announced, the Government would have prosecuted appellant only for the offense which authorized the greater maximum punishment.[8] In this case, because of the very short duration of each unauthorized absence, each Article 86 violation is punishable to the same extent as is each breach of restriction.[9] In this case, then, where there is no difference in the authorized maximum punishment, we will dismiss the lesser-included offense.

Under paragraph 127c, Table of Maximum Punishments, Manual, *supra,* the findings of guilty which can be affirmed would sustain a sentence exceeding the jurisdictional limits of the court-martial which tried Doss. Moreover, we are convinced from all the circumstances—including his record of nonjudicial punishments for prior

unauthorized absences shortly before the instant offenses and his unsworn statement to the military judge that he wanted a discharge—that appellant's sentence was not enhanced by the failure to set aside the multiplicious findings. Accordingly, no relief as to the sentence is required in this case.

### III

The decision of the United States Navy-Marine Corps Court of Military Review is reversed as to Charge I and its two specifications; the findings of guilty of Charge I and its two specifications are set aside and Charge I is dismissed. In all other respects the decision is affirmed.

Judge FLETCHER concurs.

COOK, Judge (concurring in the result):

In my opinion, the elements of breaking restriction, charged under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, were subsumed into the elements of unauthorized absence, Article 86, UCMJ, 10 U.S.C. § 886, where the area of restriction coincided exactly with appellant's assigned place of duty. In so concluding, I confess that I consciously ignore one element of breaking restriction which is not technically present in unauthorized absence, namely prejudice to good order and discipline or discredit to the armed forces. However, these effects are in reality characteristic of

---

**7.** It appears that while the two absences without authority involve different elements as a matter of law from those of the two breaches of restriction, "these different elements are fairly embraced in the factual allegations of the ... [breaches of restriction] and established by evidence introduced at trial," *see United States v. Baker,* 14 M.J. 361, 368 (C.M.A.1983). In other words, "the pleadings and evidence adduced at trial show that ... [the absences without authority are] lesser included offense[s] of ... [the breaches of restriction] of which ... [the] accused has also been convicted." *Id.* at 367.

**8.** Under some circumstances, conceivably, there may be some overwhelming social or mil-

itary policy impelling prosecution for a certain offense even though another charge also is available which carries with it a more severe maximum punishment. Unless this is clear on the record, however, we will assume that the prosecutor will elect to allege the offense which authorizes the greatest maximum punishment.

**9.** Under paragraph 127c, Table of Maximum Punishments, Manual for Courts-Martial, United States, 1969 (Revised edition), an unauthorized absence for not more than 3 days is punishable by confinement for 1 month and forfeiture of two-thirds pay for 1 month—the same punishment authorized for a breach of restriction.

all offenses charged under the Uniform Code, and it is merely a matter of historical accident that some offenses came to be assigned separate articles without that element, while others continue to be charged with the element under the general article. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). For multiplicity purposes, it would be artificial and, in some applications, unconscionable to regard this as an "additional" element. With this clarification, I arrive at the same conclusion reached by the majority by applying the analysis I set forth in *United States v.* *Baker,* 14 M.J. 361, 371 (C.M.A.1983) (Cook, J., dissenting).

I disassociate myself completely from the first paragraph of part II of the majority opinion. The elements of the offense of willful disobedience of a lawful order, and the facts necessary to prove same, contrast starkly with those at least of unauthorized absence. The result is that multiple punishments in such cases are not unimaginable. *United States v. Baker, supra* (Cook, J., dissenting).

I concur in the result reached by the majority.