**UNITED STATES**

v.

**Senior Airman Timothy L. CATON, FR 552–31–7595 United States Air Force.**

**ACM S27165.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 May 1986.

Decided 13 Nov. 1986.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Timothy J. Malloy.

Appellate Counsel for the United States: Colonel Andrew J. Adams, Jr., Lieutenant Colonel Morris A. Tanner, Jr. and Squadron Leader Alan M. Hemmingway, RAAF.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION

LEWIS, Judge:

Pursuant to his pleas of guilty the appellant was convicted of three specifications of breaking restriction, on 19, 20, and 21 March 1986, willfully disobeying a lawful order of his superior commissioned officer not to depart the installation during the period of his restriction by leaving the installation on 20 and 21 March 1986, and failing to go to his appointed place of duty. The latter offense was not circumstantially related to the first four. At trial and on appeal appellant has urged that the offense of willfully disobeying his superior's order is multiplicious with two of the breaches of restriction and should be dismissed. As a consequence, he further urges, his sentence should be reassessed, since the remaining findings of guilty do not authorize the imposition of a punitive discharge. For the reasons set forth below, we disagree and we affirm.

The record establishes that the appellant received nonjudicial punishment in February 1986 consisting, in part, of a 45-day restriction to the installation. On 19 March 1986, appellant's commander received information that the appellant had been seen off the installation. When he was located he was directed to report to the commander's office. During the course of his meeting with the commander, on 20 March 1986, the appellant was advised of the commander's intent to impose an additional nonjudicial punishment. His commander stressed that he remained restricted to the installation by virtue of this prior punishment. The commander advised the appellant that his situation was serious and that he should not compound it by further breaking of restriction. The commander was acutely aware, according to his testimony, that the appellant was experiencing stress from domestic and financial problems and was attempting to persuade him not to aggravate an already bad situation. Appellant's status was, indeed, very tenuous at that juncture. In addition to the nonjudicial punishment he had previously received, documents submitted during the sentencing phase of the trial reflected his receipt of four letters of reprimand as of that date.

In addition to a stern counselling, appellant's commander issued an oral direction that he would not depart the installation without permission so long as the restriction remained in effect. Notwithstanding this counselling and oral direction appellant subsequently departed the installation without permission the same day and again the next day, 20 and 21 March 1986.

■ The military judge declined to dismiss the charge and specification alleging willful disobedience of the commander's order. He determined that the breaches of restriction of 20 and 21 March were multi-

plicious for sentencing purposes with the willful disobedience, but that the more stringent maximum punishment for the latter offense would apply. This determination was entirely correct in light of the facts of this case.

The military judge concluded that the ultimate offense characterizing appellant's actions on 20 and 21 March 1986 was the defiance of his commander's authority. Therefore, he reasoned, the punishment prescribed for a violation of Article 90, U.C.M.J., 10 U.S.C. § 890, was applicable. The "ultimate offense" test was enunciated in *United States v. Bratcher*, 18 U.S.C. M.A. 125, 39 C.M.R. 125 (1969), and further expounded upon in *United States v. Quarles*, 1 M.J. 231 (C.M.A.1975), and cases cited therein. These cases explain that when a superior's order proscribes activity otherwise punishable under the Code, the proscribed activity and not the violation of the order constitutes the ultimate offense. If these decisions were strictly applied in the appellant's case, the breaches of restriction, chargeable as violations of Article 134, U.C.M.J., 10 U.S.C. § 934, rather than the willful disobedience of a superior's order, were the "ultimate offenses." However, this is not the correct legal conclusion to be drawn in this case.

In *Quarles, supra,* at 232, Judge Ferguson explained the importance of clearly identifying the ultimate offense: "However, our concern in this area is that the giving of an order, and the subsequent disobedience of same, not be permitted thereby to escalate the *punishment* to which an accused otherwise would be subject for the ultimate offense involved." (Emphasis in original).

This does not mean that the commission of the act proscribed by a superior's order is the ultimate offense rather that the disobedience of the order in all cases. In an earlier case the Court of Military Appeals acknowledged this in principle: "It is undeniable that a superior officer may, by supporting a routine duty with the full authority of his office, lift it above the common ruck...." *United States v. Loos*, 4 U.S.C. M.A. 478, 16 C.M.R. 52, 54 (1954). Thus, the Court of Military Appeals has held that defiance of an order to perform a pre-existing duty can be construed as the ultimate offense where the use of the order "is not improperly designed to increase punishment in a given instance." *United States v. Petterson*, 17 M.J. 69, 72 (C.M.A.1983) (accused was properly sentenced for disobedience of his first sergeant's order to terminate his AWOL status and return to duty). *Accord United States v. Landwehr*, 18 M.J. 355 (C.M.A.1984). *Compare United States v. Doss*, 15 M.J. 409 (C.M.A. 1983), wherein Chief Judge Everett, while deciding other multiplicity issues, expressed reservations as to whether an accused should have been charged with disobeying an order not to leave his ship in addition to breaches of a preexisting restriction to the ship.

In the instant case we are satisfied, as was the military judge, that appellant's commander had legitimate motives for directing appellant not to break restriction again. The record supports the military judge's conclusion that appellant's commander was not motivated to issue an order for the purpose of enhancing potential punishment. Under the circumstances, appellant's almost immediate defiance of the order "strikes at the very essence of military order and discipline and cannot be condoned." *United States v. Petterson, supra,* at 72. It should be noted that under the holding in *Petterson* the offenses could have been treated as separately punishable. It was clearly not error for the military judge to have concluded that, while the offenses would not be regarded as separately punishable, the more stringent Article 90, U.C.M.J., punishment would apply.

■ We are mindful that our holding effectively sanctions a commander's act of reinforcing his own prior order, a situation at least factually distinguishable from *Petterson* and *Landwehr*. In so doing we caution that like situations must be carefully scrutinized on a case by case basis to insure that a second order was not prompt-

ed by vindictive motives. In this case, we have determined that the commander's motives were not vindictive and that the military judge correctly identified the ultimate offense as the Article 90 violation.

We have examined the record of trial, the assignment of errors and the government's reply thereto and have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Judge STEWART concurs.

SESSOMS, Senior Judge (dissenting):

I would have great difficulty in convicting an airman of willfully disobeying the order of a commanding officer, if the officer, when placed under oath, was unable to articulate with any degree of specificity the words he used in delivering the order. My review of the record leads me to conclude that the extent of the commander's action was to remind the accused that he was still restricted to the base and, at most, restate the order he gave when he restricted the accused originally. I reach that conclusion in spite of the fact that the accused entered a plea of guilty to the offense charged and entered into a stipulation that his commander ordered him "not to leave the base again during the period of the restriction."

The majority are overreaching in their attempt to lift this case "above the common ruck." We all agree that the court is required to test for the "ultimate offense." The application of that test to these facts convinces me that the "ultimate offense" committed by this accused was the breaking of the restriction imposed by the Article 15 action. I believe that the facts of this case are precisely those contemplated by Chief Judge Everett when he said, "... it is questionable that a charge of willful disobedience of the order not to leave the ship should have been added to the charges alleging breach of restriction to the ship."

*United States v. Doss*, 15 M.J. 409, 413 (C.M.A.1983). I do not detect the open defiance of authority which appears to be the base on which the majority opinion rests. I find it somewhat bemusing for the majority to conclude that the commander's order was not intended for the purpose of "enhancing potential punishment," but then pronounce their judicial blessing on that event when it ultimately occurs.

The appropriate disposition of this case is to set aside the findings of guilty of Charge II and its specification, to dismiss that Charge, and reassess the sentence. In reassessing, I would set aside the bad conduct discharge and two months of the forfeiture, since that part of the sentence would not then be authorized. I would approve the remainder of the sentence as adjudged.