**UNITED STATES**

v.

**Senior Master Sergeant Bernard
A. BARBER, FR213–54–1028,
United States Air Force.**

**ACM 32250.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 23 March 1996.

Decided 15 May 1997.

Appellate Counsel for Appellant: Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, and Major Ray T. Blank.

Appellate Counsel for the United States: Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, and Captain Libby A. Brown.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, C.H., II, Judge:

Appellant was convicted contrary to his pleas by a general court-martial with enlisted representation of three specifications of indecent assault, four specifications of indecent language, one specification of soliciting another to commit sodomy, and assault with intent to commit rape, all in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. Members sentenced him to a bad-conduct discharge, confinement for 3 years, and reduction to the grade of E-4, which was approved by the convening authority. Appellant appeals contending: (I) the evidence is factually insufficient to sustain the findings of guilt; (II) his sentence is unduly severe; and (III) the military judge erred in instructing the members that assault with intent to commit rape was a lesser included offense (LIO) of attempted rape. We find merit in the third assignment of error for the reasons discussed below.

### Facts

Appellant was a squadron first sergeant at Andrews Air Force Base (AFB), Maryland, during the relevant times covered by the charges and specifications. The charges covered a period of over three years, from April of 1992 to June of 1995, and involved four different female victims, all active duty airmen junior in grade to him, two of whom were in his direct chain of command. The earliest, and the latest, charge related to a single victim, Technical Sergeant (TSgt) M. She was working for appellant as a dormitory manager when on June 6, 1995, he came in unannounced and uninvited to her office and forced his affections on her, culminating in his pinning her back against the wall, taking down her uniform pants and his own, and attempting to penetrate her vagina with his penis. He desisted only after TSgt M squirmed away from him and began loudly praying for deliverance. As it turned out, this was not the first time appellant had misbehaved with TSgt M. In 1992, she revealed, he had come over to her house and shown her pictures he had taken of his erect penis, and then had exposed himself to her. She did not report it at the time, and three years later, in view of his recent remarriage, she thought it was "safe" to be around him again, even going so far as to apply for the dormitory manager's job. To her dismay, appellant began to renew his sexual overtures, kissing and hugging her, and requesting that she reciprocate. On one occasion, he had attacked her and wrestled her to a table in his office, coaxing her to the effect of "c'mon, you know you want it." She endured these without reporting them, admitting that she was (or had been) somewhat "interested" in him. The June 6th event, however, evidently frightened her, and she went more-or-less promptly to the Air Force Office of Special Investigations to report it.

It wasn't long before the news of this hit the Andrews grapevine. Other women who had been victimized, independently, began to come forward, even though none of them had known about the existence of the other. TSgt A, who had been commandant of the airman leadership school, related how appellant had persistently asked her out to lunch. Happily married, in her own words, TSgt A had just as consistently declined. But one time, wanting his proffered advice on a particularly bedeviling personnel problem, she assented. On the trip back from the restaurant, TSgt A claimed that appellant had turned the topic to women's sexual fantasies. He boasted about always having a woman "on the side" at each of his previous assignments, then bemoaned the fact that the most recent woman had been reassigned. He offered TSgt A the opportunity to replace her, emphasizing the urgency of his need by fondling her thigh and grabbing at her crotch through her clothing. When she tried to remove his hand, he seized her hand and placed it upon his penis, which, even through his clothing, she could tell was fully erect.

Master Sergeant (MSgt) C was the first sergeant of another squadron at the same time that appellant was the president of the Andrews AFB First Sergeants' Council. Her mistake was to remark, offhand, after appellant returned from his honeymoon with his second (or third) wife, that it had been so long since she'd been on a honeymoon, she'd forgotten what it was like. Possibly encouraged by this, appellant called her later on

and, in the coarsest conceivable language, offered to perform cunnilingus on her, to do "something wonderful" with her.

Then–Senior Airman (SrA) D, who was a civilian at the time of trial, having been honorably discharged, testified that she had been propositioned by appellant on three different occasions when she went to him to request a dormitory room. As with others, appellant suggested oral sex and invited her to consider having sexual intercourse with him on the desk in his office.

Taking the stand in his own defense, appellant denied everything. Through questioning he speculated that the entire trial had been scored, scripted, and orchestrated by the wing Senior Enlisted Advisor, Chief Master Sergeant (CMSgt) B, because of a professional disagreement between the two of them. It was his contention that MSgt C and TSgt A, for reasons never disclosed, wished to curry favor with CMSgt B and were willing to perjure themselves to do so. He stumbled somewhat in formulating motives for TSgt M or Ms (formerly SrA) D, both of whom had been subordinates in appellant's squadron, but he denied everything they had said all the same. The court-members chose to disbelieve appellant and to believe his four accusers beyond a reasonable doubt, convicting him of every single specification alleged, excepting only that they acquitted him of the specification alleging attempted rape of TSgt M on June 6, 1995. Instead, they convicted him of the "lesser included offense" (LIO) of assault with intent to commit rape. We turn to this next.

### Whether Assault with Intent to Commit Rape is an LIO of Attempted Rape

After both sides had rested on the merits, the military judge discussed his proposed instructions. On his own, he vouchsafed that he had two potential LIO's to the charged offense of attempted rape—assault with intent to commit rape and indecent assault. Civilian defense counsel objected to assault with intent to commit rape, arguing that it was not an LIO at all, while conceding indecent assault was an LIO and should be instructed. The prosecutor, even though asked, ventured no opinion. Despite the de-

fense objection and the lack of prosecutorial enthusiasm, the military judge gave the disputed instruction, telling the court-members that assault with intent to commit rape was a "lesser" offense to that of attempted rape. Under the facts of this case, this was error.

The elements of the offense of attempted rape under Article 80 of the UCMJ, 10 U.S.C. § 880, are:

1. That the accused did a certain act, with
2. The specific intent to commit the offense of rape;
3. That the act was more than mere preparation, but constituted a direct movement toward the commission of the offense; and
4. That the act tended to effect the commission of the offense of rape in violation of Article 120, UCMJ, 10 U.S.C. § 920;

MANUAL FOR COURTS-MARTIAL, UNITED STATES (MCM), Part IV, ¶ 4.b. (1995 ed.)

The elements of the offense of assault with intent to commit rape are:

1. That the accused did bodily harm to (assaulted) a certain person;
2. That at the time of the assault, the accused intended to commit rape; and
3. That under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MCM, Part IV, ¶ 64.b (1995 ed.)

The instructions fashioned by the military judge cited the same alleged conduct for the "overt act" element of attempted rape and the "assault" component of the assault with intent to commit rape, viz., by "unfastening and lowering the pants of Tech Sergeant [M] and trying to insert his penis into her vagina." The specific intent to commit rape is a common element of both. There was, of course, no variance in the factual specifics of the encounter on June 6, 1995. One either believed that something happened according to the account of TSgt M, or that nothing whatever happened, as appellant claimed.

That understood, the actual difference between the two offenses is near metaphysical. The government cites *United States v. Hobbs*, 23 C.M.R. 157, 1957 WL 4454 (C.M.A.

1957), for the proposition that assault with intent to commit rape is a legitimate lesser included offense of attempted rape. In that case, the issue before the Court was whether, in a case involving a charge of attempted rape, the Army Board of Review could affirm a finding of a lesser included offense of indecent assault, even though that LIO had not been instructed upon by the law officer. For some reason, the Court treated in dictum with the offense of assault with intent to commit rape. Its discussion of the relationship of that charge with attempted rape is illuminating.

> When [assault with attempt to commit rape] is compared with the offense of attempted rape, it is at once apparent that the sexual intent is the same in both instances, and that the overt act required for the latter may well consist of an assault. Many courts have had difficulty distinguishing the two offenses, and "there is authority that every assault with intent to rape is an attempt, but that the converse does not follow." ... [I]t is difficult indeed to conjure up a hypothetical situation to support [the proposition that an assault with intent to commit rape is not equivalent to an attempt to commit rape.] It is at least safe to conclude that in almost all situations where the prosecution could charge and prove an assault with intent to commit rape, it could charge and prove attempted rape as well.

*Id.* at 162.

We search in vain through the lead opinion and the concurrence for any indication of an actual holding that assault with intent to commit rape is an LIO of attempted rape. At best, the opinions suggests that in the appropriate factual circumstances, it *can be,* but even that must be held as dictum, since the issue was clearly not before the Court.[1]

What *Hobbs* actually held was that indecent assault could be, and was under the factual circumstances of Hobbs' case, a lesser included offense to either attempted rape or assault with intent to commit rape, and that the law officer erred in failing to instruct as such. In our case, both parties concede that indecent assault is an LIO of attempted rape, was fairly raised by the evidence, and the military judge correctly instructed to that effect.

Since the time of the enigmatic *Hobbs,* the relationship of assault with intent to commit rape and attempted rape has swerved erratically from one extreme to the other. For example, in at least one case our superior Court passed without comment a trial judge's decision to instruct that, flip-flopping the presumed order of severity in *Hobbs,* attempted rape was an LIO of assault with intent to commit rape. *United States v. Langley,* 33 M.J. 278, 279 (C.M.A.1991).

More recently, and with considerable consistency, the view has been that the two offenses are alternative ways of charging the same thing, neither subordinate to the other. Hence, while they may be charged separately to meet the exigencies of proof, if there is a finding of guilt as to both one conviction must be set aside.[2] *United States v. Gibson,* 11 M.J. 435 (C.M.A.1981) (assault with intent to commit rape and attempted rape identical crimes). *Accord United States v. Edwards,* 35 M.J. 351, 357 (C.M.A.1992); *United States v. Doss,* 15 M.J. 409, 413 (C.M.A.1983); *United States v. Shanahan,* 16 M.J. 654, 656 (A.F.C.M.R.1983).

Reinforcing our belief that the two offenses are identical, and that neither is the lesser of the other, is that they both carry the same maximum sentence to confinement

---

1. A possible source of the confusion over the *Hobbs* holding lies in *United States v. Mingo,* 23 C.M.R. 388, 389, 1957 WL 4503 (C.M.A.1957). In a cryptic, one-paragraph opinion, Chief Judge Quinn in our view incorrectly asserted that in *Hobbs* "the majority of the Court held that assault with intent to commit rape is lesser included in a charge of attempted rape." In both *Hobbs* and *Mingo,* Judge Ferguson dissented. As the law evolved, it is plain that his view ultimately prevailed.

2. Even in *Hobbs* the lead opinion referred to the two as "principal offenses" to which the offense of indecent assault could be an LIO. *Hobbs,* 23 C.M.R. at 162–3. This, we believe, is the correct reading of *Hobbs,* never mind the inexplicable statement in *Mingo.* Cf. *United States v. Rozema,* 33 C.M.R. 694, 700, 1963 WL 4944 (A.F.B.R.), *pet. denied,* 33 C.M.R. 436, 1963 WL 5005 (C.M.A.1963) (assault with intent to commit rape and attempted rape "principal" offenses).

of 20 years. *Compare* MCM, Part IV, ¶ 4.e. (maximum sentence for attempted rape) *with* MCM, Part IV, ¶ 64.e(1) (maximum sentence for assault with intent to commit rape). It was misleading, therefore, for the military judge to suggest to the members that assault with intent to commit rape was somehow a "lesser" offense to that of attempted rape. That confusion may well have engendered the members' mistaken belief, as the government suggests in its brief, that they were giving appellant a "break" in convicting him of assault with intent to commit rape and acquitting him of attempted rape. While that may well have been their motivation, it actually did nothing of the sort.

■ There remains the perplexing problem of deciding whether appellant was prejudiced by this mistake. Neither party's brief addresses this issue, since the government takes the position that there was no error, and appellant suggests that he was disadvantaged by the military judge's handing the members an unwarranted escape from an "all or nothing" strategy.[3]

It can be argued with some persuasion that appellant was not prejudiced at all by the erroneous instruction. After all, he was clearly put on notice by the government's specification as to what he would be defending against, and there is no doubt that the government could have, even though it didn't, charge the offense in the alternative. What troubles us, however, is that the members *acquitted* appellant on the Article 80 charge and convicted on the basis of a charge suggested by the military judge which they were misled into believing was a "lesser" one. What's more, the trial defense counsel recognized this to be the case and properly objected at trial. Although it is entirely possible given the members' indisputable certainty as to the trickiest aspects of the charge—the intent to commit rape and the attempted insertion of his penis—that they would have convicted as charged had the military judge

not offered them a false alternative, we cannot be certain that would have been the case. It is equally plausible that, for whatever reason, they did not like "attempted rape," and left only with a single alternative lesser charge of indecent assault, would have opted for the latter. We will make the appropriate adjustment in our decretal paragraph and reassess the sentence accordingly.

### Factual Sufficiency

■ Four women, independent of one another, reluctantly but resolutely came forward and complained of sexual misconduct—misconduct which bore striking factual parallels. From the witness stand appellant floundered in an attempt to come up with a theory to explain why they might be motivated to perjure themselves by testifying against him. His conspiracy theory was so porous as to invite scorn from the most ardent conspiratorialist. And if there were any doubt in the members' minds as to the veracity of his accusers at the conclusion of the prosecution's case, appellant's performance on the stand may have done much to lay them to rest. Although we are disadvantaged in making factual assessments based solely on our reading of a cold, dispassionate record, appellant's flimsy, self-contradictory, and implausible explanations starkly contrast with the measured, consistent testimony of his female victims. Like the members, we are unimpressed with the point that none of them made a prompt outcry. Under the circumstances that is to be expected given the embarrassing nature of the revelations and appellant's position near the pinnacle of the enlisted hierarchy at Andrews AFB. If anything, the reluctance of his accusers to come forward cuts sharply against appellant's conspiracy theory. We are therefore persuaded beyond a reasonable doubt of appellant's guilt. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

---

**3.** We find this assertion puzzling. As adverted above, the military judge used the identical language of misconduct to comprehend the assault and the overt act in furtherance of the attempted rape. Hence, the members had to have found, beyond a reasonable doubt, that appellant was guilty of "unfastening and lowering the pants of

TSgt M and trying to insert his penis into her vagina." Further, appellant conceded at trial, and before us, that the offense of indecent assault is an appropriate LIO in this case. Thus, the members always had an "out" if they were uncomfortable with a finding of attempted rape.

757

*Sentence Severity*

Finally, there can be no question of appellant's sterling twenty-plus years of military service, his outstanding performance reports, chestful of ribbons, or his impressive military accomplishments. But on the other side of the ledger, the abuse of appellant's unique position of power as a first sergeant to proposition and assault junior enlisted people, some of them in his direct chain of command, over a period of three years, weighs heavy. We are unsurprised, therefore, that the court-martial members gave the prosecutor nearly exactly what he asked for in terms of a sentence, only substituting a bad-conduct discharge for the dishonorable discharge recommended. Likewise we are satisfied that the court-martial members gave appropriate deference to appellant's lengthy, and otherwise unblemished military career, balancing it against the nature and severity of his crimes. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). Taking those factors into consideration, we do not find appellant's sentence to be inappropriately severe. That said, however, we must reassess the sentence in view of our holding on the erroneous instruction on findings.

*Conclusion*

The finding as to Charge II, is amended to read GUILTY, except the words "attempt to rape," substituting therefor the words "commit an indecent assault upon," and adding after the concluding word "Force," the words "a person not his wife, by unfastening her pants, placing his exposed penis against her, and holding her against a wall." Of the excepted words, NOT GUILTY, of the substituted and added words, GUILTY, in violation of Article 134, UCMJ.

The maximum period of confinement for indecent assault is 5 years, whereas for assault with intent to commit rape it is 20 years. The corresponding effect of our holding on appellant's maximum exposure to confinement would be to reduce it from 42 years to 27 years—a not insubstantial difference. Nevertheless, we are persuaded we can reassess the sentence in this case, because the actual finding found by the members, that appellant assaulted TSgt M meaning to rape her, is still quite serious. *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990). We note that appellant was also convicted of three other indecent assault specifications, together with three indecent language specifications and one specification of solicitation to commit sodomy. We are persuaded, therefore, that the court-martial members, had they been correctly instructed and found the lesser of the two possible offenses for Charge II, would still have sentenced appellant to no less than a bad-conduct discharge, confinement for a period of 30 months, and reduction to the grade of E–4, and we reassess accordingly.

The findings as above-modified are correct in law and fact, and the sentence as reassessed is appropriate, and the same are hereby

AFFIRMED.

Senior Judge PEARSON and Judge J.H. MORGAN concur.