UNITED STATES

v.

Ramon A. AMBALADA, 561 21 0680, Hospitalman E–3, U. S. Navy.

NCM 76 2012.

U. S. Navy Court of Military Review.

Sentence Adjudged 11 May 1976.

Decided 14 Feb. 1977.

LT Robert R. Sparks, Jr. JAGC, USNR, Appellate Defense Counsel.

LCDR A. K. Llewellyn, JAGC, USNR, Appellate Government Counsel.

Before MURRAY, Senior Judge, and MALLERY and GREGORY, JJ.

GREGORY, Judge:

Tried by a general court-martial constituted with officer members, appellant, contrary to his pleas, was convicted of rape and dereliction of his duties as a hospital corpsman, in violation of Articles 120 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 892. He was sentenced to a bad conduct discharge, confinement at hard labor for three years, forfeiture of all pay and allowances for three years, and reduction to pay grade E–1. The convening authority approved the findings of guilty and only so much of the sentence as provided for the bad conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances for one year, and reduction to pay grade E–1.

Appellant has assigned the following errors before this Court:

I APPELLANT WAS WRONGLY DENIED HIS REQUEST FOR CHARACTER WITNESSES TO TESTIFY AT HIS COURT–MARTIAL.

II FOR THE SAKE OF APPEARANCES, ONE OF THE OFFICERS WHO SAT AS A MEMBER IN APPELLANT'S CASE SHOULD NOT HAVE DONE SO.

III THE GOVERNMENT FAILED TO PROPERLY AUTHENTICATE PROSECUTION EXHIBIT 2 (THE VICTIM'S UNDERGARMENT).

IV THE DEFENSE WAS WRONGLY DENIED ITS RIGHT TO CONFRONT AND CROSS–EXAMINE THE PERSON WHO ACTUALLY PERFORMED CHEMICAL TESTS UPON THE GOVERNMENT'S EVIDENCE.

**1134**

V APPELLANT IS ENTITLED TO REVERSAL OF HIS CONVICTION FOR RAPE SINCE THE MILITARY JUDGE FAILED TO INSTRUCT THE COURT MEMBERS CONCERNING THE LESSER INCLUDED OFFENSE OF ADULTERY. *See United States v. Cory,* 74 1898 (NCMR 11 March 1975).

We do not concur in the assignments of error, and we affirm.

I

Appellant stands convicted of raping an unconscious patient while enroute to the Naval Hospital at U. S. Naval Base, Subic Bay, in an ambulance in which he was the attending hospital corpsman. The government's case consisted primarily of the testimony of the driver of the ambulance who reported what he had observed to proper authorities and a laboratory analysis of a vaginal discharge stain on the panties worn by the alleged victim. This stain was found to contain male semen (possibly mixed with vaginal fluid) and to indicate that it emanated from an individual with blood type B or was a mixture of fluids from individuals with types B and O. Both the victim and her husband have blood type O, while appellant has blood type B. Appellant's defense was general denial and, specifically, that the ambulance driver was lying.

At trial, appellant sought to bolster his defense with character witnesses who would testify to his general reputation for truth and veracity and for moral integrity. Although appellant was a native of the Philippines and his family and boyhood acquaintances would have been available to testify, none was called in his behalf. In addition, appellant had been stationed at Subic Bay for the previous 1½ years of his 2½ years in the Navy, but he had only one witness from his current duty station testify in his behalf. Instead, he requested five witnesses who had known him briefly at Hospital Corpsman School in San Diego, California, or at his first duty station in Long Beach, California, and who were now

stationed in various parts of the continental United States. Appellant also requested the presence of an uncle who was a member of the United States Navy and stationed aboard an operating ship.

The convening authority denied appellant's request for these six witnesses. [Appellate Defense Exhibits C and D]. Appellant renewed his request at trial, and the military judge refused to grant the request for five of the witnesses; however, he approved the request as to the one witness who appeared to have had the closest relationship with appellant. This latter witness was provided at Government expense and did personally testify. [R. 252–255]. The stipulated testimony of four of the other five witnesses was presented during the defense case-in-chief on the merits. [Defense Exhibits D, E, F and G].

■ Appellant complains that he has been prejudiced because his five unprovided witnesses were unable to testify personally at his trial. He relies primarily on *United States v. Carpenter,* 1 M.J. 384 (1976), in which the Court of Military Appeals stated that once the materiality of a defense witness is shown the Government must produce the witness. We recognize that evidence of good character and military proficiency is admissible both on the merits and in presentencing and may be crucial to the case of a particular accused. *United States v. Sweeney,* 14 U.S.C.M.A. 599, 34 C.M.R. 379 (1964); *United States v. Manos,* 17 U.S.C.M.A. 10, 37 C.M.R. 274 (1967). The Court of Military Appeals has also instructed, however, that requests to subpoena witnesses need to be carefully considered in order to prevent a useless or abusive issuance of process. Each case must be evaluated on an *ad hoc* basis in which the materiality of the testimony sought is weighed against the equities of the situation. *United States v. Sweeney, supra,* at 606, 386. The Court has also clearly pointed out that their opinions, in which they have held denials of witnesses to have been improper, should not be construed as giving an accused *carte blanche* authority for the issuance of subpoenas in

all cases. *United States v. Manos, supra* at 15, 279.

Our examination of the record of trial in this case convinces us that the expected testimony of the five denied witnesses would have had no truly probative value either on the question of appellant's guilt or innocence or with respect to his sentence. We adopt the view of appellate government counsel that character evidence is "material" in the sense intended by the Court of Military Appeals in *United States v. Carpenter, supra,* when it may well "tip the balance in favor of the accused." The expected testimony in this case is not of that significance. The record of trial reveals that the requested witnesses who did not personally appear at trial had known appellant for only a brief period of time or had not been in close contact with him for some period of time. Their appearance at trial was not crucial to appellant's case and would not have made a difference in its outcome either as to findings or sentence.

For this reason, we view the expected testimony not to have been material and also to have been cumulative with testimony already presented at trial through other witnesses. The decision of the military judge to grant the request for only the one witness is considered to have been completely fair to appellant.

## II

Appellant also contends on appeal that the president of the court should not have been allowed to sit as a member in his court-martial. The president had not been a member of the panel originally appointed. Because of successful challenges, however, the Court had been reduced below a quorum, and the convening authority added a new president whose normal assignment was a flag secretary on the convening authority's staff.

Appellant's principal complaint against the new president appears to be that officer's close working relationship with the convening authority. Following voir dire, however, trial defense counsel recognized there existed no grounds for challenge for cause. [R. 90]. Appellant's peremptory challenge had already been exercised.

Absent a showing that the president was disqualified for some valid ground, we find appellant's complaint to be without foundation. A court member is not disqualified solely because the convening authority is about to prepare his fitness report. *United States v. Adams,* 36 C.M.R. 718 (ABR 1966), *petition denied* 37 C.M.R. 470 (1966). It would follow, therefore, that a court member should not be disqualified merely because he works for the convening authority, even in a close staff relationship. There is nothing in the record of trial to indicate that the president would have been influenced in his deliberations because of his close working relationship with the convening authority.

We concur with trial defense counsel that there existed no grounds for challenge for cause. This includes the requirement of insuring that the trial be kept free from any substantial doubt as to legality, fairness, and impartiality. Paragraph 62f, MCM, 1969, (Rev.). In the absence of a challenge for cause, we likewise see no requirement for the military judge to have acted *sua sponte* to excuse the president.

The assignment of error is without merit.

## III

Appellant argues that there is room for dispute whether the victim's panties (prosecution exhibit 2), upon which the laboratory tests were made and seminal stains found, were the same ones worn by the victim at the time of the alleged rape. The victim testified that she took off her clothes, including her undergarments, and put on a hospital gown upon being readmitted to the hospital on 15 December 1975, the day following the alleged rape. [R. 169]. The record of trial indicates that these clothes were surrendered at that time to a Nurse David, a Filipina nurse at the Naval Hospital. [Prosecution Exhibit 8]. Because of the delay in the report of the incident by the ambulance driver, it was the

following day, 16 December 1975, that the Naval Investigative Service agent assigned to the case went to the hospital to interview the alleged victim. At this time, he also received from an unidentified Filipina nurse the panties purportedly removed by the victim the previous day. [R. 179].

The evidence discloses that the victim did not return to her own home after being released from the hospital following treatment at the emergency room on the night of the incident in question. Instead, she went to a friend's quarters before returning to the hospital the following day. Despite the lapse of one day between the victim surrendering her undergarments and their being picked up by the NIS agent for subsequent laboratory examination, the evidence is sufficient to establish conclusively that the panties submitted for laboratory examination were those worn by the victim on the night of the alleged rape.

### IV

■ Appellant contends that he was wrongly denied his right to confront and cross-examine the person who actually performed the chemical tests on the alleged victim's panties (prosecution exhibit 2) and the seminal stains found thereon.

Mrs. Vivien Stopper, a forensic serologist from the Army Criminal Investigation Laboratory at Camp Zama, Japan, personally testified at trial. Mrs. Stopper stated that she had supervised the testing performed on the panties and that she had been assisted by a Mrs. Floy Lipscomb, another qualified examiner of blood and body fluids. Mrs. Stopper indicated that Mrs. Lipscomb actually physically performed much of the testing, or as Mrs. Stopper described it the "busy work". [R. 197]. Following Mrs. Stopper's testimony, the defense requested that Mrs. Lipscomb also be subpoenaed to allow cross-examination as to Mrs. Lipscomb's expertise and competency as well as to the regularity of the procedures performed by her. *See United States v. Evans,* 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972), and *United States v. Miller,* 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974). This re-

quest was denied by both the military judge [R. 212] and the convening authority [Appellate Exhibit F]. We believe this decision was correct.

In *United States v. Evans, supra,* the Court of Military Appeals concluded that the report of a laboratory analysis conducted in the regular course of business by a qualified government chemical examiner was a valid business entry and as such was admissible into evidence. However, in *United States v. Miller, supra,* the Court emphasized that the admissibility of the document as a business entry does not bar an accused from attacking the accuracy of the report through the medium of calling the analyst or examiner to examine into his or her expertise and the regularity of the procedures employed. Also, in *Miller,* the Court recognized the indisputable "right of confrontation and cross-examination" as "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *United States v. Miller, supra,* at 248, 381, citing *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

Mrs. Stopper, the supervisor, had signed the laboratory report, which we consider to have been properly received into evidence as Prosecution Exhibit 4. The defense was afforded the opportunity of cross-examining Mrs. Stopper, which they took excellent advantage of. She explained that she had originally been assigned appellant's case when she analyzed certain pubic hairs which had earlier been forwarded for examination. She retained responsibility for the case when the alleged victim's panties were later submitted to the Camp Zama Laboratory for examination of certain stains. [R. 202]. Mrs. Stopper described in detail the various tests which were performed, the reliability standards maintained in the Laboratory, and her own experience level and that of Mrs. Lipscomb. Mrs. Stopper stated that, although Mrs. Lipscomb actually performed much of the testing, she (Mrs. Stopper) was physically present during the testing and personally supervised and read the results of each test. [R. 197–198]. Mrs.

Stopper indicated that she did not stand over Mrs. Lipscomb's shoulder and watch everything that was done, but she maintained close contact with Mrs. Lipscomb because she was aware that she [Mrs. Stopper] would be signing her name to the report [R. 200].

Under the circumstances of this case, we consider appellant to have been afforded his opportunity to test the accuracy of the laboratory report. He was allowed to confront and cross-examine the analyst who supervised the testing and who had the responsibility for signing the report and ensuring its accuracy. It was the opinion of Mrs. Stopper, set forth in the laboratory report and expanded upon in her trial testimony, which was crucial to the cause of appellant. We believe that the presence of Mrs. Stopper met the constitutional requirement that appellant be allowed to confront the witnesses against him. We find that the military judge was not incorrect in refusing to order the presence of Mrs. Lipscomb as an additional witness.

### V

In his final assignment of error, appellant contends that the military judge erred in failing to instruct the members that adultery was a possible lesser included offense. We would initially note that such an instruction was not requested by the defense at trial. [R. 365–368, 397]. *But see United States v. Moore,* 12 U.S.C.M.A. 696, 31 C.M.R. 282 (1962), and *United States v. Graves,* 23 U.S.C.M.A. 434, 50 C.M.R. 393, 1 M.J. 50 (1975).

In the case cited by appellant, *United States v. Cory,* No. 74–1898 (N.C.M.R. 11 March 1975), this Court declined to affirm a finding of adultery where it set aside a conviction as to a lewd and lascivious act which had been returned by exceptions and substitutions under a charge of rape. The *Cory* decision can be read as intimating that adultery could be a lesser included offense of rape.

■ We believe the correct view, and the one that has been more consistently followed by military courts, is that adultery and fornication are not included within a charge of rape. *See United States v. Nicholson,* 22 C.M.R. 402 (A.B.R. 1956), *affirmed* 8 U.S.C.M.A. 499, 25 C.M.R. 3 (1957); *United States v. Mosby,* 23 C.M.R. 425 (A.B.R. 1957); *United States v. Burns,* 25 C.M.R. 791 (A.F.B.R. 1957), *petition denied* 25 C.M.R. 486 (1958); *United States v. Wilson,* 32 C.M.R. 517 (A.B.R. 1962). Adultery and fornication are offenses against the morals of society rather than the person of one of the participants. They do not involve an element of assault, such as is implicit in the heinous crime of rape and the offenses commonly recognized as lesser included in a charge of rape.

■ Even if we were to assume that adultery could be a lesser included offense of rape, such an offense was certainly not raised by the evidence in this case. In our view, adultery involves an element of consent on the part of both parties. In the case *sub judice,* consent never became an issue. The alleged victim was unconscious and had no recollection of what might have occurred. The appellant has steadfastly maintained that nothing improper happened. Without this element of consent, there would have been no requirement for the military judge to instruct on adultery under any circumstances.

This assignment of error is also without merit.

Accordingly, the findings of guilty and the sentence, as approved on review below, are affirmed.

Senior Judge MURRAY concurs.

Judge MALLERY absent.