**UNITED STATES, Appellee,**

v.

**Vero HICKSON, Staff Sergeant, U.S. Army, Appellant.**

No. 51038.

CM 444345.

U.S. Court of Military Appeals.

June 2, 1986.

For Appellant: *Captain Annamary Sullivan* (argued); *Lieutenant Colonel William P. Heaston, Major Eric T. Franzen, Captain Harry L. Williams, Jr.* (on brief); *Captain Robert S. Johnson, Jr.*

For Appellee: *Captain Michael W. Hoadley* (argued); *Colonel James Kucera, Lieutenant Colonel Joseph A. Rehyansky, Lieutenant Colonel Gary F. Roberson, Lieutenant Colonel John F. De Pue* (on brief); *Lieutenant Colonel Adrian J. Gravelle* and *Lieutenant Colonel Thomas M. Curtis.*

## Opinion

EVERETT, Chief Judge:

Appellant was tried by a general court-martial with members on charges of rape, sodomy, and adultery—all involving the same woman—in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 934, respectively. He pleaded guilty to adultery because, as he acknowledged during the providence inquiry, he had participated in sexual intercourse with a person married to someone other than himself; and a finding was entered pursuant to his plea. Hickson contested the rape for he claimed that intercourse had occurred with the woman's consent; and also he denied that any act of sodomy had taken place with her. Nonetheless, the members found him guilty of the two offenses to which he had pleaded not guilty; and they sentenced him to a dishonorable discharge, confinement and forfeiture of $200.00 pay per month for 7 years.

The convening authority approved these results and the Court of Military Review affirmed in an unpublished memorandum. We granted review of an issue questioning "whether the military judge erred by failing to dismiss the specification of Charge III when, on the same facts, its allegation of adultery was legally inconsistent with appellant's conviction for rape."

I

In his treatise, Professor Perkins explains that adultery and fornication were

not crimes at English common law but "were punished by the Church as ecclesiastical offenses."[1] R. Perkins, *Criminal Law* 377 (2d ed. 1969), citing 2 Pollock & Maitland, *History of English Law* 543 (2d ed. 1899). *Accord* 2 *Wharton's Criminal Law* 353–54 (C. Torcia 14th ed. 1979) [hereafter Wharton]. "In the ... [eyes] of the canon law, adultery violated the marriage vow" which had been taken by the adulterer. Thus, "if a married person ... had sexual intercourse with" someone "other than his or her spouse," the married person had committed adultery. The other participant, if married, also had engaged in adultery but, if unmarried, only in fornication. Perkins, *supra* at 377; Wharton, *supra* at 354.

Although the common law did not treat adultery as a crime, it was concerned with the effects of such conduct on inheritance and property rights: If the woman was married, the illicit intercourse might "introduce spurious offspring into" her husband's household and thereby bring an illegitimate heir into his family. With this harm in mind, the common law considered both the woman and her partner in intercourse to be adulterers. If, however, the woman was single, no risk to property rights was presented; and so the illicit intercourse was considered to be fornication on the part of both parties, even if the man was married. Perkins, *supra* at 377; Wharton, *supra* at 354.

Because adultery had not been a crime at common law, it was punishable in this country only when prohibited by statute. Perkins, *supra* at 378.[2] Although "adultery" and "fornication" appear in the indices of most state penal codes, often they are proscribed only if there has been "illicit cohabitation." Once such statutes are discounted, adultery appears to be an offense in about half the states, and fornication in about a third. Perkins, *supra* at 379.

There is a lack of uniformity in state prohibitions of adultery and fornication, which stems from the divergence between the views taken long ago in English ecclesiastical and common-law courts. Thus, in some states, if either party to intercourse is married to another person, both parties are guilty of adultery. In other states, adultery can be committed only by a married person; and the married partner or partners will be guilty of adultery but an unmarried participant in intercourse will, at most, be guilty of fornication. In still other states, illicit intercourse is adultery only if the woman is married: If she is married, then both participants are guilty of adultery regardless of the man's marital status; but if not, both are guilty of fornication—again, regardless of the man's marital status. Wharton, *supra* at 357–58; J. Miller, *Handbook on Criminal Law* 428 (1934).

At one time, Title 18 of the United States Code prohibited unlawful cohabitation, adultery, and fornication when committed in places subject to Federal territorial jurisdiction.[3] However, when the Criminal

1. If fornication "was open and notorious, ... it was punishable" at common law "as a public nuisance." *Wharton's Criminal Law* 360 (C. Torcia, 14th ed. 1979). Moreover, "in 1650, during the second year of The Commonwealth, adultery was made a capital crime." However, this prohibition "was repealed [the year] after the Restoration," and thereafter adultery was a matter of concern only in the canon law. R. Perkins, *Criminal Law* 377–78 (2d ed. 1969).

2. *But see* J. Miller, *Handbook of Criminal Law* 427–28 (1934) ("With us it has been said that this portion of the ecclesiastical law was part of our common law, thus regarding adultery as a common-law crime. Other courts have taken the contrary view, and hold that, if adultery is not made a crime by statute, it cannot be punished at all as a distinctive crime, unless it

amounts to open and notorious illicit cohabitation." (Footnotes omitted.) )

3. Sec. 314. If any male person cohabits with more than one woman, he shall be fined not more than three hundred dollars, or imprisoned not more than six months, or both. [18 U.S.C. 514.]

 * * * * * *

Sec. 316. Whoever shall commit adultery shall be imprisoned not more than three years; and when the act is committed between a married woman and a man who is unmarried, both parties to such act shall be deemed guilty of adultery; and when such act is committed between a married man and a woman who is unmarried, the man shall be deemed guilty of adultery. [18 U.S.C. 516.]

Code was revised in 1948, these prohibitions were omitted. Currently, the only federal offense indexed under "adultery" or "fornication" is 18 U.S.C. § 2198, which concerns "seduction of female passenger." *See also* 18 U.S.C. § 3614 (Title 18, USCA, p. 400).[4] The Assimilative Crimes Act, 18 U.S.C. § 13, would also seem to authorize prosecution in a Federal court for adultery or fornication committed within an area subject to exclusive or concurrent Federal jurisdiction, if that act violated the law of the state within which the act or omission occurred. However, we have found no reported cases where such a prosecution has taken place.

## II

In military law, the history of adultery and fornication is comparatively recent. Colonel Winthrop does not discuss these offenses in his treatise, *Military Laws and Precedents.* The Manuals for Courts-Martial contain no reference to these offenses prior to 1949. Section 127, Naval Courts and Boards (1937), notes that unlawful cohabitation, adultery, and fornication "are provided for under the 22d" Article for the Government of the Navy [5] "and by 18 U.S. Code ... 514, 516, 518," as those provisions read at that time. *See also* n. 3, *supra.*

In its discussion of these offenses, Naval Courts and Boards states that "[a]dultery comprises voluntary sexual intercourse" and that "[f]ornication is unlawful carnal knowledge by an unmarried person of other." Two form specifications are provided for adultery; the first alleging that the accused committed the offense "by having

voluntary sexual intercourse with" a married woman; and the second alleging that the accused, "being then a married man, did ... commit adultery by having voluntary sexual intercourse with a woman not his wife." A form specification for fornication alleged that the accused, "being then an unmarried man, did ... commit fornication by having carnal knowledge of a woman." The same section refers to a lesser-included offense of "[s]candalous conduct tending to the destruction of good morals." Sec. 127.

The Manual for Courts-Martial, U.S. Army, 1949, recognized adultery in the Table of Maximum Punishments and authorized a dishonorable discharge and confinement for 1 year for the offense. (Page 138.) Also, in Appendix 4, that Manual provided the following form specification for alleging adultery under Article of War 96:

117. In that _____ (a married man) did, at _____, on or about _____ 19__, wrongfully have sexual intercourse with _____, (a married woman) (a woman) not his wife.

*See United States v. Butler,* 5 C.M.R. 213, 215 (A.B.R. 1952). The 1951 and the 1969 Manuals for Courts-Martial gave the same treatment to adultery in the Table of Maximum Punishments, and the form specifications use language identical with the 1949 Manual for alleging violations of Article 134 of the Uniform Code. *See* para. 127c and App. 6(c), form specification 119, Manual for Courts-Martial, United States, 1951; para. 127c and App. 6(c), form specification 127, Manual for Courts-Martial, United States, 1969 (Revised edition). This specifi-

---

\* \* \* \* \* \*

Sec. 318. If any unmarried man or woman commits fornication, each shall be fined not more than one hundred dollars, or imprisoned not more than six months. [18 U.S.C. 518]

Ch. 321, 35 Stat. 1149 (1909).

4. Under the topic "Sex Offenses" in the index of Title 18, the only other offenses listed are rape and carnal knowledge of a female under sixteen when committed within the special maritime and territorial jurisdiction of the United States. *See* 18 U.S.C. §§ 2031–2032. For rape, death or life imprisonment is authorized (indeed, the

death sentence for rape may provide for dissection of the rapist's body. 18 U.S.C. § 3567 (repealed effective November 1, 1986) ); for carnal knowledge, the maximum punishment is 15 years' confinement for a first offense and 30 years' confinement for a subsequent offense. 18 U.S.C. § 1153 prohibits rape, carnal knowledge, assault with intent to commit rape, and incest if committed in Indian country.

5. "All offenses committed by persons belonging to the Navy which are not specified in the foregoing articles shall be punished as a court-martial may direct."

cation contemplates that the crime of adultery has been committed if the accused has sexual intercourse with someone not his spouse when either of the parties is married to a third person.

In the 1984 Manual, adultery receives a slightly more extensive treatment. The elements of the offense are set out as well as acknowledgment of attempted adultery as a lesser-included offense. The maximum punishment is established, and a sample specification is provided. The Manual also contains an *"Explanation"* to the effect that "[a]dultery is not a lesser included offense of rape." *See* Part IV, para. 62, Manual for Courts-Martial, United States, 1984. In support of this proposition, the drafters' analysis cites *United States v. Ambalada,* 1 M.J. 1132 (N.C.M.R.), *pet denied,* 3 M.J. 164 (1977). *See* App. 21, para. 62, 1984 Manual, *supra.* Again, the conduct proscribed is sexual intercourse between the accused and another person at a time when one of them was married to someone else.

The fact that adultery remains a viable offense against military law is clear from recent judicial action. In *United States v. Johanns,* 20 M.J. 155 (C.M.A.1985), the accused, an Air Force Captain, had been convicted of various offenses of adultery and fraternization. The Court of Military Review had set aside the fraternization convictions; and its action in this regard was the subject of issues certified to us by the Judge Advocate General of the Air Force. In his cross-petition for review one issue Johanns asserted was that he could not properly be prosecuted for adultery because this offense did not exist in military law. This Court affirmed the action of the court below in setting aside the fraternization convictions; but we denied the accused's cross-petition for review on this issue. *See* 18 M.J. 427. In turn, he petitioned the Supreme Court for a writ of certiorari to determine the legality of the adultery convictions and claimed that because his acts would not have constituted an offense under the law of the state in which they occurred, he could not be tried by court-martial for those acts. 54 L.W.

3180. This petition for certiorari was denied. —— U.S. ——, 106 S.Ct. 147, 88 L.Ed.2d 122.

Although fornication was discussed in Naval Courts and Boards, it is not mentioned in any edition—past or present—of the Manual for Courts-Martial. Nonetheless, there were a few recorded prosecutions for this crime in the early days of the Uniform Code of Military Justice. Appellate review of those convictions afforded opportunities to describe the scope of that offense in military law. For instance, in *United States v. Snyder,* 1 U.S.C.M.A. 423, 427, 4 C.M.R. 15, 19 (1952), this Court, addressing this matter for the first time, stated:

It is true, as urged by appellate defense counsel, that fornication, in the absence of aggravating circumstances, has been held not to be an offense under military law. *United States v. Ord,* 2 CMR(AF) 84. This is consistent with the view expressed earlier herein that Congress has not intended by Article 134 and its statutory predecessors to regulate the wholly private moral conduct of an individual. It does not follow, however, that fornication may not be committed under such conditions of publicity or scandal as to enter that area of conduct given over to the police responsibility of the military establishment.

Four years later, this Court had occasion to revisit the area and said:

In *United States v. Snyder,* 1 USCMA 423, 427, 4 CMR 15, we indicated that Article 134 is not intended "to regulate the wholly private moral conduct of an individual." We also noted that some military tribunals have held that "simple fornication" is not an offense in military law. This view accords generally with the English common law idea that the act was a punishable offense only when committed "openly and notoriously." 37 CJS, Fornication, § 2a, page 119; 1 Am Jur, Adultery, § 13, page 687. Also, it has been held that in the absence of statute, the same rule prevails in the

United States. 37 CJS, *supra*. However, we need not decide whether these authorities correctly define military law. Suffice it that, in our opinion, the specifications allege aggravating circumstances sufficient to state an offense under Article 134.

*United States v. Berry*, 6 U.S.C.M.A. 609, 614, 20 C.M.R. 325, 330 (1956). The "aggravating circumstances" in *Berry* were that appellant and another soldier each engaged in illicit sexual intercourse with each of two women—all the activity occurring in one hotel room. Given these facts, the Court concluded: "In our opinion, the act is 'open and notorious,' flagrant, and discrediting to the military service when the participants know that a third person is present."

 In summary, the treatment of adultery and fornication in military law seems to be this: (a) two persons are guilty of adultery whenever they engage in illicit sexual intercourse if either of them is married to a third person; (b) if unmarried, they are guilty of fornication whenever they engage in illicit sexual intercourse under circumstances in which the conduct is not strictly private; and (c) private sexual intercourse between unmarried persons is not punishable. This treatment is the same as that in some, but not most, states; but it differs from that in the Federal courts where, apart from trials under 18 U.S.C. § 13, these offenses no longer can be prosecuted.

### III

 Appellant emphasizes that "[a]dultery has never been considered a crime of violence." Naval Courts and Boards, *supra*, describes it as "voluntary sexual intercourse"; and according to *Black's Law Dictionary* 47 (5th ed. 1979), it is "[v]oluntary sexual intercourse of a married person with a person other than the offender's husband or wife." From this premise, appellant reasons "that convictions for the offenses of rape and adultery arising from a single act of intercourse are logically inconsistent and should, by the very nature of the offenses, be mutually exclusive." The Government responds that the "voluntary" aspect of adultery refers to the state of mind of the party being charged with adultery—not that of the other person. From this, the Government concludes, "It is therefore [of] no consequence whether the act of intercourse is consummated with or without the consent of the accused's partner."

This argument is somewhat difficult to reconcile with the use of the term "voluntary" in the definitions of adultery. Even a crime of violence like rape usually is "voluntary" on the part of the person charged with the offense because the accused cannot be convicted of the offense unless he had at least a general intent to commit the crime. On the other hand, there is precedent that, although adultery obviously requires "a joint physical act," it does not necessarily require "a joint criminal intent." *Signs v. State*, 35 Okl.Cr. 340, 250 P. 938, 940 (App.1926). *Accord State v. Wade*, 66 Utah 267, 241 P. 838 (1925) (that nothing about adultery involves the willingness of the victim); *State v. Chambers*, 87 Iowa 1, 53 N.W. 1090, 1091–92 (1893) (that the willing-act aspect of adultery refers only to the accused); and *State v. Henderson*, 84 Iowa 161, 50 N.W. 758, 759 (1891) (that the other person's "unwillingness to such intercourse ... [is] entirely immaterial ...").[6]

Certainly, in prosecutions for adultery it has never been held that the consent of the partner to intercourse must be established as an element of the crime, *see, e.g., United States v. Bobo*, 477 F.2d 974, 985–87 (4th Cir.1973); and the absence of such consent

---

**6.** *See generally Bishop on Statutory Crimes* § 660 (3d ed.) (penetration of "a woman ... too drunk to give consent may be prosecuted either as a rape, or as an adultery, at the election of the prosecuting power"), quoted at 250 P. 940. Often, a defendant has been tried on a charge such as adultery or incest when the evidence showed rape. *E.g., Signs v. State*, 35 Okl.Cr. 340, 250 P. 938 (App.1926); *State v. Wade*, 66 Utah 267, 241 P. 838 (1925); *State v. Chambers*, 87 Iowa 1, 53 N.W. 1090 (1893); *State v. Henderson*, 84 Iowa 161, 50 N.W. 758 (1891).

has not been held to constitute an affirmative defense. Indeed, we are unaware of any case, military or civilian, where a prosecution for adultery has failed because the Government did not prove beyond reasonable doubt that the partner consented to intercourse or because the defense had produced evidence that intercourse took place without the partner's consent.

Accordingly, despite the various references to adultery as "voluntary," it does not appear that rape and adultery are so inconsistent that a man charged with adultery is entitled to acquittal if he produces evidence that intercourse took place without the consent of the woman. Thus, the situation is different from that which exists where an accused is charged simultaneously with receiving stolen property and with larceny of that same property; for under those circumstances the accused cannot logically be guilty of both offenses. *See, e.g., United States v. Cartwright,* 13 M.J. 174 (C.M.A.1982).

## IV

### A

To say that two offenses are not logically exclusive is not to say that an accused can be convicted and sentenced with respect to both of those offenses. *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985). For example, usually an accused cannot receive consecutive sentences upon being convicted of two offenses, one of which is included in the other. *See Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "The assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes." *Ball v. United States,* 105 S.Ct. at 1672. *See also Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).[7]

In *Ball,* the Supreme Court extended this interpretation of congressional intent from consecutive sentences to concurrent findings. There, the defendant had been convicted of unlawful receipt and unlawful possession of the same firearm, when the unlawful possession was incident to its unlawful receipt. Consecutive sentences were imposed for the two offenses, although, on the basis of a government concession, the Court of Appeals concluded that this was improper and remanded the case to the District Court with instructions to make the sentences concurrent.

Upon further review, the Supreme Court in an opinion by Chief Justice Burger resolved a conflict among the circuits and ruled that additional relief was required. The Court acknowledged that it had been proper to prosecute the defendants simultaneously for receiving and possessing the same firearm because the Government has "broad discretion to conduct criminal prosecutions, including ... [the] power to select the charges to be brought in a particular case." However, this "is not to say that ... [the defendant] may be convicted and punished for two offenses. Congress can be read as allowing charges under two different statutes with conviction and sentence confined to one." *Id.* 105 S.Ct. at 1671. The Court pointed out that "[t]he remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention." It went on to say:

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction,* apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result

---

7. This result is not constitutionally required but depends on the interpretation of congressional intent. *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *United States v. Truglio,* 731 F.2d 1123, 1128–30 (4th Cir.), *cert. denied,* 469 U.S. 862, 105 S.Ct. 197, 83

L.Ed.2d 130 (1984) (double jeopardy does not preclude RICO and predicate offense convictions); *United States v. Licavoli,* 725 F.2d 1040, 1050 (6th Cir.), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984).

in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. See *Benton v. Maryland,* 395 U.S. 784, 790–791, 89 S.Ct. 2056, 2060–2061, 23 L.Ed.2d 707 (1969); *Sibron v. New York,* 392 U.S. 40, 54–56, 88 S.Ct. 1889, 1898–1899, 20 L.Ed.2d 917 (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

We emphasize that while the Government may seek a multiple-count indictment against a felon for violations of §§ 922(h) and 1202(a) involving the same weapon where a single act establishes the receipt and possession, the accused may not suffer two convictions or sentences on that indictment. If, upon the trial, the District Judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the District Judge should enter judgment on only one of the statutory offenses.

105 S.Ct. at 1673–74.

Although legislative intent is the test in determining whether concurrent convictions and consecutive sentences are permissible, the answer is not always clear. For example, in *Whalen v. United States, supra,* the issue was whether the defendant could be sentenced to consecutive terms of imprisonment for rape and first-degree murder committed by killing the same victim in the perpetration of rape. Under the District of Columbia Code, felony-murder was a species of first-degree murder which could be committed by killing a human being in the course of any of six specified felonies, including rape. Thus, in the abstract, proof of felony-murder did not require proof of rape; but *Whalen* had been indicted for felony-murder committed by means of rape.

Rejecting the interpretation of legislative intent by the District of Columbia Court of Appeals, a majority of the Supreme Court concluded that the consecutive sentences were impermissible. Justice Rehnquist dissented because he believed the Court of Appeals had come "far closer to the proper ascertainment of congressional intent than" had the majority. 445 U.S. at 714, 100 S.Ct. at 1449. In his opinion, he commented that, "when applied to compound and predicate offenses, the *Blockburger* test has nothing whatsoever to do with legislative intent, turning instead on arbitrary assumptions and syntactical subtleties. *Cf.* n. 6, *supra.* If the polestar in this case is to be legislative intent, I see no reason to apply *Blockburger* unless it advances that inquiry." 445 U.S. at 712, 100 S.Ct. at 1448.

Examples of the complexity of determining legislative intent in these matters can be multiplied. For instance, a defendant can be convicted and punished both for conspiracy to commit a subsequent offense and for commission of that offense, *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); but under Wharton's Rule, this is not true where some element of agreement is implicit in the offense itself. *United States v. Crocker,* 18 M.J. 33 (C.M.A.1984).

Another example arises out of applying the general proposition that a prosecutor may not fragment an offense, *see, e.g., Ex Parte Snow,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887). On the one hand, under Federal postal law an accused who on a single occasion has opened several bags of mail may be separately convicted and punished with respect to each bag. *See Ebeling v. Morgan,* 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915). Consistently, in *Albrecht v. United States,* 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927), the Supreme Court remarked that "[t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction." *Id.* at 11, 47 S.Ct. at 254. Accordingly, the Court

there authorized separate punishments for illegal possession of liquor and for illegal sale of the same liquor. On the other hand, in *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), the Supreme Court ruled that simultaneous transportation of more than one woman in violation of the Mann Act did not constitute multiple violations of that act subjecting the offender to multiple punishments.

### B

The 1951 Manual for Courts-Martial provided that, if an accused was convicted of several offenses, the maximum punishment imposable, subject to the jurisdictional limits of the court-martial, would be the aggregate of the maximum punishments for the "separate offenses" of which he had been found guilty. For determining what constitutes a separate offense, the Manual utilized the *Blockburger* test, whereunder crimes are separately punishable if each requires proof of facts not demanded by the other. *See* paras. 74*b* (4) and 76*a* (8), 1951 Manual, *supra.*

As this Court pointed out early in its history, "That the apparent simplicity of this rule is deceptive is demonstrated by a survey of the Federal cases." *United States v. Beene,* 4 U.S.C.M.A. 177, 178, 15 C.M.R. 177, 178 (1954). In various cases we attempted to provide guidance as to factors which might help in ascertaining what maximum punishment had been intended when an accused was convicted of several offenses arising out of the same transaction. *See, e.g., United States v. Beene, supra* ; *United States v. Redenius,* 4 U.S.C.M.A. 161, 15 C.M.R. 161 (1954); *United States v. Larney,* 2 U.S.C.M.A. 563, 10 C.M.R. 61 (1953); *United States v. Davis,* 2 U.S.C.M.A. 505, 10 C.M.R. 3 (1953); *United States v. Soukup,* 2 U.S.C.M.A. 141, 7 C.M.R. 17 (1953). The task is especially difficult because Congress enacts the

punitive articles which define crime under the Uniform Code; but, for the most part, it has delegated to the President the task of prescribing the maximum punishments for those crimes. *See* Art. 56, UCMJ, 10 U.S.C. § 856. Moreover, two of the punitive Articles—Articles 133, UCMJ, 10 U.S.C. § 933, and 134—are stated in very general terms and do not even mention by name, much less define, the specific crimes punishable thereunder.

In recent years, this Court has also been concerned about multiple convictions resulting from a single transaction. *See, e.g., United States v. Zupancic,* 18 M.J. 387 (C.M.A.1984); *United States v. Zubko,* 18 M.J. 378 (C.M.A.1984); *United States v. Doss,* 15 M.J. 409 (C.M.A.1983); *United States v. Baker,* 14 M.J. 361 (C.M.A.1983). Our concern in this regard anticipated the Supreme Court's recent decision in *Ball v. United States, supra.* However, it was predicated on the established principle that "each separate criminal conviction typically has collateral consequences, in both the jurisdiction in which the conviction is obtained and in other jurisdictions." [8]

In seeking to determine legislative intent as to the treatment of multiple convictions for a single act, we have been mindful that

> an examination of all legislation in a particular field is necessary for a full appreciation of any specific enactment. This consideration must be more inclusive than the literal inquiry of in pari materia; it must probe basic policy and the pattern and development of the means and procedures used to activate that policy. An inquiry of this character can disclose a legislative common law of surprising consistency and continuity. It not only may give meaning to the "legislative intent" of a particular statute but can also pave the way for constructive judicial use of

---

8. *See United States v. Doss,* 15 M.J. 409, 411 (C.M.A.1983), where we quoted from Justice Marshall's dissent in *Missouri v. Hunter, supra* 459 U.S. at 372, 103 S.Ct. at 681. Justice Marshall relied on *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), which were the same two precedents relied on by Chief Justice Burger in his opinion of the Court in *Ball v. United States,* 105 S.Ct. 1668, 1674 (1985).

legislative as well as case law precedents.

2A *Sutherland Statutory Construction* § 45.10 at 45 (C. Sands 4th ed. 1984 Revision) (footnote omitted).

Thus, from our consideration of legislative intent, we came to the conclusion that, although dereliction of duty and larceny are prohibited by different Articles of the Uniform Code (*see* Articles 92 and 121, 10 U.S.C. §§ 892 and 921, respectively), have different elements, and have different purposes, an accused's conviction for dereliction of duty should be set aside where the dereliction consisted of his failure to prevent or report a larceny of Government property for which he was also convicted. *See United States v. Marks*, 11 M.J. 303 (C.M.A.1981); *United States v. Pretty*, 11 M.J. 153 (C.M.A.1981); *cf. United States v. Heyward*, 22 M.J. 35 (C.M.A.1986). Of course, prosecution for an accused's failure to report his own crime may present self-incrimination issues; but this was not the basis for our ruling. We simply did not believe that Congress intended for there to be simultaneous convictions or aggregate punishments under these circumstances. *United States v. Thompson*, 22 M.J. 40 (C.M.A.1986).

In another instance, the judges of this Court could not agree as to whether simultaneous convictions were permitted. *United States v. West*, 17 M.J. 145 (C.M.A. 1984). There the majority concluded that an accused could be convicted both of larceny of military property and of wrongful disposition of that property, even though both offenses occurred simultaneously. *See* Arts. 122 and 108, UCMJ, 10 U.S.C. §§ 922 and 908, respectively. The dissent's view there was that Congress had intended to permit conviction only for one of these offenses where there was a single transaction.

C

■ Against this background, we turn now to consider whether there was a congressional intent that an accused not only can be tried by court-martial for rape and adultery arising out a single act but also can be convicted of both offenses.[9] Even though conviction of adultery does not require proof of consent, adultery has never been thought of as a crime of violence. Indeed, the early history of adultery and fornication suggests that these offenses were created to deal with conduct which society considered morally wrong but which did not fall within the common-law prohibition against sexual intercourse obtained by violence.

Now—both in military law and in many states—there exists a hierarchy of sex offenses. At the top is rape—intercourse against the will of the victim—for which punishment of up to life imprisonment is often provided.[10] Where intercourse is absent but illicit sexual activity and force are present, a lesser crime has been committed, such as assault with intent to rape or indecent assault; but even for such offenses the penalty is quite severe. *See* Part IV, paras. 45d, 64e, 63e, 1984 Manual, *supra*; para. 127c, Table of Maximum Punishments, 1969 Manual, *supra*. Where force is absent but illicit intercourse remains, a different crime—such as carnal knowledge, adultery, bigamous cohabitation, or "open and notorious" fornication—has been committed.[11] If no aggravating factor is

---

**9.** It seems clear from *Ball v. United States, supra*, that the members of the court-martial can be permitted to return findings of guilty as to both offenses, but if they are multiplicious, one of the findings must be set aside.

**10.** *See* Art. 120, Uniform Code of Military Justice, 10 U.S.C. § 920; Part IV, paras. 45b (1) and c(1), Manual for Courts-Martial, United States, 1984. The Uniform Code and many state penal codes authorize death sentences for rape; but in the absence of aggravating circumstanc-

es, such punishment cannot be constitutionally inflicted. *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977).

**11.** Because force is missing but another aggravating factor is present, such offenses are not lesser-included in rape, *see United States v. Ambalada*, 1 M.J. 1132, 1137 (N.C.M.R.), *pet. denied*, 3 M.J. 164 (1977), and cases cited therein, "unless the added circumstance or element is one which is necessarily encompassed within the specification under which the accused is

present, then generally society does not treat the sexual conduct as criminal.

It seems doubtful that Congress ever intended that an offense like adultery, which comes near the bottom of the hierarchy of sex offenses and fills a gap that otherwise might exist in the prohibition of sexual misconduct, would be used to enhance punishment for rape. Indeed, because Congress deleted adultery and fornication from the Federal criminal code and has never specifically approved prosecutions for adultery under the Uniform Code, it seems especially inappropriate to allow a conviction for this offense to be used in this manner. We note, too, that although many state penal codes have some provision for adultery, we have been cited no precedent—and have discovered none—which upheld simultaneous convictions for rape and adultery. Indeed, the practice of charging these offenses together seems to prevail for the most part—if not exclusively—in trials by court-martial.[12]

Conviction for rape authorizes punishment of confinement up to life. Whether the accused pleads guilty or not guilty, his marital status and that of his victim can be proved as aggravating factors if he is convicted of rape—although probably these factors will not have great weight in determining what is an appropriate sentence for a rapist. Thus, a convicted rapist will not escape a just punishment because of our holding that a concurrent conviction of adultery must be set aside. Of course, if Congress desires a different result in future cases, it may so direct, for our decision is not predicated on any constitutional ground. *Cf. Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

### V

The Government was free to prosecute Hickson both for rape and for adultery;

but because he was convicted of both, his conviction of adultery must be set aside. However, we are convinced that here the failure to set aside the adultery findings did not affect appellant as to sentence.

Accordingly, the decision of the United States Army Court of Military Review is reversed as to Charge III and its specification; the findings of guilty thereon are set aside and that Charge and its specification are dismissed. In all other respects the decision below is affirmed.

COX, Judge (concurring in the result):

Chief Judge Everett has provided an excellent and extensive analysis of the offense of adultery and a comprehensive study of the law of "multiplicity" as this Court has interpreted it. However, this is a difficult case in which to apply a clear-cut test or any one of the multitude of tests that have developed. Thus, it remains problematical for practitioners to recognize multiplicity when they see it. *See* Thomas, *The Prohibition of Successive Prosecutions for the Same Offense: In Search of a Definition*, 71 Iowa L.Rev. 323, 327 (1986).

In fact, I am concerned that this case will create more confusion than it resolves. In *United States v. Mayfield*, 21 M.J. 418 (C.M.A.1986), we used a different means to achieve the same result. There, a fraternization charge which was based on the same act of sexual intercourse as an indecent assault charge was dismissed as violative of "the policy implicit in paragraph 26c of the 1969 Manual for Courts-Martial," United States (Revised edition). *Id.* at 422. In this case, the adultery charge is dismissed on the rationale that Congress did not intend that an accused be convicted of both rape and adultery based on the same act of sexual intercourse. The two cases can be reconciled only in terms of result.

---

arraigned, considering the form and language of the specification, and considering the circumstances relied upon by the government to make out its case." *United States v. Burns*, 25 C.M.R. 791, 794 (A.F.B.R. 1957). *See United States v. Baker*, 14 M.J. 361 (C.M.A.1983).

**12.** We have no criticism of this practice, which is within the discretion of the prosecutor, *see Ball v. United States, supra.* In some instances it will prevent acquittal when an accused succeeds in establishing that sexual intercourse occurred with the consent of the alleged victim.

Because adultery is not an offense under the Uniform Code and is charged as conduct to the prejudice of good order and discipline or service discrediting under Article 134,[1] Congress has never had occasion to consider the relationship of this offense to crimes proscribed under the Code. Unlike Chief Judge Everett, I am unable to find where Congress or the President has manifested any "intent" to prohibit simultaneous convictions for rape and adultery. Therefore, using the statutory construction test of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), both convictions can stand, as "each provision requires proof of a fact which the other does not."

I have no difficulty with the result in this case, however, as I believe that the offenses are essentially mutually exclusive and that an accused should be charged with both adultery and rape with respect to the same act of sexual intercourse only for contingencies of proof.[2] Rape requires that the sexual intercourse be accomplished by force and without consent. Thus, the victim is the female upon whom the violent act of sexual intercourse is perpetrated. On the other hand, the offense of adultery is "against the morals of society rather than the person of one of the participants." *United States v. Ambalada*, 1 M.J. 1132, 1137 (N.C.M.R.), *pet. denied*, 3 M.J. 164 (1977). Mutual consent is not an element of the offense, but it is implicit in adultery. *See ex parte Nielson*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). In view of the nature of the offenses, there is no need to allow convictions on both charges to stand. *See, e.g., United States v. Heyward*, 22 M.J. 35 (C.M.A.1986); *United States v. Cartwright*, 13 M.J. 174 (C.M.A.1982); *United States v. Marks*, 11 M.J. 303 (C.M.A.1981).

1. Uniform Code of Military Justice, 10 U.S.C. § 934.

2. In several cases that have passed before us, the Court of Military Review in an unpublished opinion has dismissed an adultery charge as inconsistent with rape. *See, e.g., United States v. Maxwell*, 21 M.J. 229 (C.M.A.1986).