**UNITED STATES, Appellee,**

v.

**Sergeant First Class Kelvin F. GARD-NER, 125–52–9891, United States Army, Appellant.**

**ACMR 9101699.**

U.S. Army Court of Military Review.

9 Nov. 1992.

For Appellant: Captain James M. Heaton, JAGC, Captain Michael E. Smith, JAGC (on brief).

For Appellee: Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC, Captain Jane F. Polcen, JAGC (on brief).

Before De GIULIO, ARKOW, and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a special court-martial consisting of officers and enlisted members. Contrary to his pleas, he was found guilty of willful dereliction of duty, in violation of Article 92 Uniform Code of Military Justice, 10 U.S.C. § 892 (1982) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge. The convening authority approved the sentence.

Appellant asserts that the seizure of evidence from him through a command-directed urinalysis and the subsequent use of that evidence against him was unreasonable and in violation of the Fourth Amendment to the Constitution. Appellant also asserts that the military judge erred to appellant's substantial prejudice by denying appellant's motion to force the government to elect, after its case-in-chief on the merits, between three specifications which all parties agreed were multiplicious for findings. We find appellant's assertions without merit and affirm.

A random urinalysis was conducted for members of appellant's unit. Appellant submitted a specimen of water rather than urine. Appellant's unit commander had published a policy letter which stated, in part: "Any member of this company who is involved in the use of illegal drugs will be

dealt with harshly. The minimum punishment will be non-judicial under Article 15, UCMJ and the maximum punishment could be separation from the service." At trial, the unit commander testified that she conducted a random urinalysis monthly for the purpose of unit discipline, health and welfare, and as a deterrent to the use of drugs. She testified that she never conducted urinalysis for the primary purpose of obtaining evidence for criminal proceedings. When a soldier's urinalysis was positive, she contacted law enforcement authorities within twenty-four to forty-eight hours. From twenty tests conducted during the seventeen months of her command, two soldiers tested positive, which resulted in action under the UCMJ. In Europe, positive urinalysis test results are reported to military law enforcement agencies. U.S. Army Europe Reg. 190–2, Military Police— USAREUR Drug Suppression Plan, para. 4d(1) (20 Sep. 1991).

In *United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990), the United States Court of Military Appeals held that requiring service members to submit a urine sample as part of an inspection is constitutionally permissible. Thus, evidence obtained from the inspection is not inadmissible as resulting from an illegal search. Citing *Skinner v. Railway Executives Association*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (blood and urine tests to be administered to certain railroad employees after major train accidents upheld), and *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (urinalysis test upheld only as to employees of the U.S. Customs Service seeking transfer or promotion to positions having direct involvement in drug interdiction or requiring the employee to carry firearms), appellant contends that the Army's urinalysis program no longer falls within the special needs beyond law enforcement exception, is used routinely as the sole basis to court-martial a soldier for wrongful drug use, and fails constitutional scrutiny. Appellant points to a footnote in *Skinner* which states, in part:

> [W]hile respondents aver generally that test results might be made available to law enforcement authorities, they do not seriously contend that this provision, or any other part of the administrative scheme, was designed as "a 'pretext' to enable law enforcement authorities to gather evidence of penal law violations." Absent a persuasive showing that the ... testing program is pretextual, we assess the ... scheme in light of its obvious administrative purpose. We leave for another day the question whether routine use in criminal prosecutions of evidence obtained pursuant to the administrative scheme would give rise to an inference of pretext or otherwise impugn the administrative nature of the ... program.

*Skinner*, 489 U.S. at 621 n. 5, 109 S.Ct. at 1415 n. 5 [citations omitted]. Using this footnote, appellant contends that the Army's urinalysis program in general and the urinalysis in this case specifically were used as pretexts to obtain evidence for prosecutions and violate the Fourth Amendment. We disagree with appellant.

Drug testing in the Armed Forces is reasonable and incidental punitive actions do not render illegal an otherwise justifiable program. *Committee for G.I. Rights v. Calloway*, 518 F.2d 466 (D.C.Cir. 1975). Service members may be required to provide urine specimens without reference to their military duties under Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 313. *Bickel*, 30 M.J. at 282.

In the case before us, the urinalysis was conducted pursuant to the Army regulation. It was an inspection under the provisions of Mil.R.Evid. 313. We hold that the unit commander's policy letter does not change the purpose of the urinalysis to a pretext to obtain evidence for the purposes of prosecution. It has been recognized that positive tests results are routinely made available for use in criminal prosecution. *Bickel*, 30 M.J. at 282. The requirement that positive test results be provided to law enforcement officials does not destroy the validity of the inspection. The evidence in this case was not obtained as an unlawful search in violation of the Fourth Amendment.

■ Relating to his other assertion of error, at trial, appellant moved that the government be forced to elect between the three specifications, maintaining that they were multiplicious for findings. Trial counsel claimed the allegations were necessary based on exigencies of proof. The military judge let the specifications go to the court members, but instructed them that they could find appellant guilty of only one. The president of the court announced a finding of guilty to dereliction of duty in violation of Article 92, UCMJ (Charge I and its specification). Although the findings work sheet reflects findings of not guilty to the other specifications, those findings of not guilty were not announced.

Appellant alleges prejudice, relying on *United States v. Gibson*, 11 M.J. 435 (C.M.A.1981), and *United States v. Sturdivant*, 13 M.J. 323 (C.M.A.1982). Unlike appellant's case, in those cases the accused were found guilty of all the specifications. Appellant's case is comparable to *United States v. Mayfield*, 21 M.J. 418 (C.M.A. 1986), where inconsistent allegations were permitted to allow for exigencies of proof. This case is also similar to allegations of adultery and rape where a court is permitted to make findings of guilty only to one of the offenses. *See United States v. Hickson* 22 M.J. 146, 155 (C.M.A.1986). We find no error in permitting the court members to determine the specification which they believed was proved. In any event, appellant suffered no prejudice since he was found guilty of only one specification.

The findings of guilty and the sentence are affirmed.

Judge ARKOW and Judge WALCZAK concur.